1  Brent Caslin (Cal. Bar No. 198682)
   bcaslin@jenner.com
2  William K. Pao (Cal. Bar No. 252637)
   wpao@jenner.com
3  Kelly M. Morrison (Cal. Bar No. 255513)
   kmorrison@jenner.com
4  JENNER & BLOCK LLP
   633 West 5th Street, Suite 3500
5  Los Angeles, California 90071
   Telephone: (213) 239-5100
6  Facsimile:  (213) 239-5199

7  Attorneys for Defendants Wolters Kluwer N.V.,
   Wolters Kluwer United States Inc., Aspen
8  Publishers, Inc., Robert Becker, Richard Kravitz,
   Steve Errick, and Michael Gregory

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL J. DESARIO and NATIONAL BAR REVIEW, L.L.C., | Case No. CV 09-9385-GW(VBKx) |
| Plaintiffs, | The Honorable George H. Wu |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS** |
| WOLTERS KLUWER, a Netherlands Corporation; WOLTERS KLUWER UNITED STATES, INC., a New York Corporation; ASPEN PUBLISHERS, INC., a Delaware Corporation; EMANUEL BAR REVIEW, a business entity form unknown; ROBERT BECKER, an individual; RICHARD KRAVITZ, an individual; STEVE ERRICK, an individual and MICHAEL GREGORY, an individual, and Does 1-25, | Hearing<br>Date: May 6, 2010<br>Time: 8:30 a.m.<br>Courtroom: 10<br><br>Complaint Filed:  October 22, 2009<br><br>Trial Date:  November 9, 2010 |
| Defendants. | |

\*   \*   \*

The plaintiffs' Opposition, much like their Complaint, consists largely of fierce yet shallow, unsupported allegations of wrongdoing. But neither the Complaint's lofty allegations nor the Opposition's irrelevant references to "Enron," "predatory lending," and "corporate greed, ruthlessness and fraud" (Opp. at 12) are sufficient substitutes for the factual allegations necessary to survive a Rule 12 motion. *See Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In addition to failing to plead plausible facts (rather than conclusions) to support most of their claims, the plaintiffs plead breach of contract claims that are implausible in light of the parties' written agreements—the terms of which the plaintiffs did not even properly plead in their Complaint. Finally, many of the Opposition's arguments in support of the plaintiffs' claims are conclusory and unavailing. The Court should grant the motion for judgment on the pleadings and narrow this case only to the few claims that are actually supported by factual allegations in the Complaint.

## I.   The Court Is Entitled To Consider The Writings Attached To The Motion.

The plaintiffs ask the Court to ignore the documents that the defendants attached to their Motion. However, the law is clear that, when plaintiffs allege a breach of written contract but fail to attach the alleged contract to their complaint, the defendant may provide that document. That "document, as one that could have or rather should in fairness have been attached to the complaint, is [then] considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 n.16 (11th Cir. 1999); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). This rule is necessary "to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz*, 476 F.3d at 763 (citations, quotations, and alterations omitted); *accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir.

2006) (the rule "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting"). In fact, that is precisely what happened here. Because the plaintiffs' claims cannot survive the written agreements they entered into, the plaintiffs deliberately omitted those agreements in hope that the Court will ignore them as well. The law will not allow it.

The plaintiffs' claim that the writings are unauthenticated does not preclude this Court from considering them. To the contrary, the above case law makes clear that this is not an evidentiary dispute but an issue of pleading. The defendants are not asking the court to admit any written document into evidence. But as the rules of pleading make clear, the Court need not accept the plaintiffs' characterization of the alleged written contract "terms, but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (dismissing claim because the contract language "as it exists in the actual customer agreement, differs from the language alleged in the complaint"); *see also In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (district court may "consider[] the full text of the" writing submitted by a defendant, "including portions which were not mentioned in the complaints").

In addition, critically, the plaintiffs do not actually contest the authenticity of the agreements provided to the Court. Indeed, they acknowledge that Exhibit 1 to the Motion was "signed by Aspen and Plaintiff during the negotiation phase." Opp. at 14; *see also id.* at 23 (alleging that the "defendants and Plaintiffs entered into [the August Agreement] in the course of the negotiations"). They similarly rely on the contents of Exhibit 2 in alleging the existence of an employment agreement between Mr. DeSario and the defendants. *Id.* at 16. In light of these facts and the plaintiffs' apparent refusal to challenge the documents' authenticity (they argue that the writings are not authenticated but never claim that the documents are not accurate writings signed by the plaintiffs), it is entirely appropriate for the Court to consider the contents of the submitted documents in deciding the defendants' Motion. In fact, numerous courts

have accepted and considered documents attached by defendants, notwithstanding "suggestions" that such documents may not be authentic, when the plaintiffs failed to provide the appropriate agreements themselves. *See, e.g., Ortiz v. Mortgageit, Inc.*, No. 09-2103, 2010 WL 892202, at *4 (S.D. Cal. Mar. 9, 2010) (considering a document attached to a Rule 12 motion where plaintiff contended that it was "'difficult' to gauge whether the document is authentic" but was "apparently unwilling to assert that it is, in fact, inauthentic subject to the pleading standard of Federal Rule of Civil Procedure 11").

Moreover, the purpose of requiring authentication is to ensure that all parties have sufficient notice of documents submitted to the court, and this purpose has been satisfied here. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998), *superseded on other grounds as stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). It is undisputed that Mr. DeSario signed the documents attached to the defendants' Motion. The plaintiffs are, therefore, "obviously . . . on notice of the contents of the document[s] and the need for a chance to refute evidence" by transforming the defendants' motion into a Rule 56 motion "is greatly diminished." *See Parrino*, 146 F.3d at 706 n.4 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (court should consider on a Rule 12 motion "documents plaintiffs had either in its [sic] possession or had knowledge of and upon which they relied in bringing suit"). In sum, just as plaintiffs cannot evade dismissal of baseless claims by "deliberately omitting references to documents upon which their claims are based," plaintiffs cannot avoid dismissal merely by asserting that a document is "unauthenticated." *See Parrino*, 146 F.3d at 706.

## II.     The Lone Written Contract Claim Fails.

The only written contract claim pled in the Complaint is that Mr. DeSario was allegedly not given enough time to devote to National Bar Review. *See* Compl. ¶¶ 72, 74. As the opening brief explains, however, no such term exists in any of the writings

between the parties. Mot. at 8 - 9. In response, the Opposition now alleges that there may be other written agreements that were breached, that Mr. DeSario was in fact not allowed to devote adequate time to National Bar Review, and that there are other breaches of the alleged employment agreement. These arguments all fail, however, in light of the written agreements and what the plaintiffs pled, and did not plead, in the Complaint.

### A.     The Plaintiffs Did Not Plead Any Written Agreements.

The plaintiffs surmise that "obviously there is more to the employment agreement that Defendants have attached to their motion than meet[s] the eye" as it "is unimaginable that an employment contract for a yearly salary of $200,000.00 would not include" additional provisions. *See* Opp. at 15. But the simple fact is that, if there is another written agreement between the parties, the plaintiffs have not provided it to the court or the defendants, despite having every opportunity to do so. The burden is on the plaintiffs – not the defendants – to identify and attach the written contract that they claim was breached. If there is, in fact, an additional writing between the parties upon which the plaintiffs wish to sue, it is incumbent upon them to attach or, at a minimum, identify that agreement for the Court. *See N. County Commc'ns Corp. v. Verizon Global Networks, Inc.*, --- F. Supp. 2d ----, 2010 WL 529373, at *7 (S.D. Cal. Feb. 9, 2010). Put simply, bald allegations of other written contracts alone mean nothing.

By failing to either append the alleged contract to the complaint or quote the provisions allegedly breached, the plaintiffs have failed to satisfy the plausibility standard. *See Grant v. Adventist Health Sys. Sunbelt Health Care Corp.*, No. 09-79, 2009 WL 6315308, at *13 (W.D.N.C. July 28, 2009) (breach of written contract claim failed to "rise[] from mere speculation" to the realm of plausibility); *Lee v. Potter*, No. 08-344, 2009 WL 2057625, at *7 (S.D. Ohio July 14, 2009) (*Iqbal* and *Twombly* "require that Plaintiff identify the specific contract language" allegedly breached). In *Warwick v. University of the Pacific*, the court granted the defendant's motion to

dismiss claims for breach of written contract and breach of the implied covenant of good faith and fair dealing on the ground that, as here, "Plaintiff [did] not attach[] her contract with [defendant] to her complaint, nor has she provided any detail about its relevant provisions." No. 08-3904, 2008 WL 5000218, at *10 (N.D. Cal. Nov. 21, 2008). Significantly, while alleging her employment agreement was breached, the plaintiff "d[id] not provide information about, for example, provisions of the contract regarding whether Plaintiff was employed 'at-will,' whether the contract set a certain period of time for Plaintiff's employment or how the contract could be terminated." *Id.*[1] As in *Warwick*, by omitting the contracts allegedly breached, the plaintiffs fail to inform the Court of provisions relevant to the plausibility of their claims.

### B. The Plaintiffs' Only Specific Written Contract Claim Remains Unsupported By A Written Agreement.

The plaintiffs' criticism that the defendants improperly "focus[ed] on Plaintiff's allegations that his employer did not allow him to devote enough time to NBR" also falls flat. *See* Opp. at 19 n.5; *see also id.* at 16. The Opposition ignores that this allegation is the only written contract breach alleged in the Complaint with any specificity. *See* Compl. ¶¶ 72-75, 107-109; *see also* Opp. at 14-16. And, in arguing that this allegation is properly pled, the plaintiffs do not point to any written contract provision that would have required the defendants to allow Mr. DeSario to devote any time to NBR. Instead, the plaintiffs point to paragraph 48(6) of the Complaint, which relates to an alleged oral promise and has nothing to do with a written agreement. Opp. at 16. The defendants' argument that there simply is no written agreement requiring the defendants to allow Mr. DeSario to devote any amount of time to NBR stands effectively unopposed before the Court.

---

[1] One court ruled that, by failing to attach the alleged written contract, a plaintiff "prevent[s] th[e] court from testing the bare allegations of the Complaint against the language of the purported contract," thereby "frustrat[ing] . . . the procedural analysis required by *Twombly* and *Ashcroft*." *Grant*, 2009 WL 6315308, at *14.

### C.  The Plaintiffs' Other Breaches of the Employment Agreement Argument Also Fails.

The plaintiffs' vague contention that there are "other breaches" of the employment agreement identified in the Complaint, (*see* ¶¶ 72, 74), is woefully inadequate to state a claim to relief under Rule 12. *See Iqbal*, 129 S. Ct at 1949 ("naked assertions" devoid of "factual enhancement" are insufficient) (quoting *Twombly*, 550 U.S. at 557). Only in the Opposition did Mr. DeSario claim that the defendants breached "terms" contained in the written "employment agreement" by (1) "terminat[ing] his employment before the expiration of the year;" (2) "not pay[ing] for his car expenses;" (3) "not integrat[ing] him [sic] to WK;" and (4) "not purchas[ing] NBR." *See* Opp. at 19 n.5. But, as discussed above, the plaintiffs have never provided, or even identified, a contract that contains the terms that they allege were breached, and the only writings before the Court contain no such promises. *See* Exs. 1, 2, 3.

Even if such contract provisions were adequately alleged in the Complaint, the plaintiffs' claims of "other breaches" are implausible in light of the writings attached to the Motion. First, the "employment agreement" signed by Mr. DeSario explicitly provides that it "does not constitute a contract or guarantee of employment and so the Company or you have the right to terminate the employment relationship at will." Ex. 2. In other words, Mr. DeSario entered into an "at will" relationship with Wolters Kluwer, and so his claim that he was contractually entitled to employment for "one year" or to be "integrated" into Wolters Kluwer for some definite period must fail. In addition, as discussed below, the August Agreement states emphatically that it does not constitute an agreement to purchase NBR. *See* Ex. 1 at ¶ 3.2.

In short, the plaintiffs' sole allegation of a breach of written agreement does not line up with any written promise from any of the defendants. And their vague claims of other agreements and other alleged breaches are implausible and wholly unsupported by any of the parties' agreements. The written contract claim is flawed

and should be dismissed.

### III. The August Agreement Precludes Plaintiffs' Oral Acquisition Claim.

In response to the defendants' argument that the Complaint's oral contract claims are implausible in light of the written agreements, the Opposition makes only one coherent argument. Ignoring the clear language of the written contracts, the Opposition argues simply that oral agreements are entered into every day. Opp. at 12. But while it may be true that oral contracts exist, this says nothing of the plausibility of the plaintiffs' oral contract claims in light of the written agreements that the parties entered into in this case.

One of the written contracts that the plaintiffs failed to produce but that this Court should consider is the August Agreement, the language of which bars the plaintiffs from making an oral acquisition claim as a matter of law. Specifically, by signing the August Agreement, the plaintiffs agreed that "[n]o agreement or legal obligation with respect to any potential transaction or business relationship between the parties . . . shall be deemed to exist unless and until a Definitive Agreement has been entered into between the parties."[2] Ex. 1 ¶ 3.2. Critically, as explained in the opening brief and unrefuted in the Opposition, the parties never entered into a Definitive Agreement, and the plaintiffs do not allege that any such agreement was reached.

The plaintiffs make much of the fact that the August Agreement was "signed by Aspen and Plaintiff during the negotiation phase," "before the [alleged] acquisition contract was entered into." Opp. at 14. However, it is precisely this fact – that the parties signed the agreement *before* the alleged oral promise – that precludes the

---

[2] This provision may be enforced to preclude plaintiffs' oral acquisition claim. *See City of Oakland v. Comcast Corp.*, No. 06-5380, 2007 WL 518868, at *6 (N.D. Cal. Feb. 14, 2007) (plaintiff could not state an oral contract claim where the parties' written agreement contained an integration clause requiring that any subsequent inconsistent agreement be made in writing).

plaintiffs from now claiming that the parties entered into an oral acquisition agreement. By signing the August Agreement, the plaintiffs acknowledged that the parties could not enter into a subsequent "potential transaction or business relationship" in the absence of a "Definitive Agreement." Ex. 1 ¶ 3.2.

Under the terms of the August Agreement, a "Definitive Agreement" includes only a final written agreement. *See id.* It explicitly precludes a "verbal expression of acceptance" of a "purported offer" to enter into a "potential transaction or business relationship." *Id.* In other words, by signing the August Agreement, the plaintiffs agreed that they could never enter into an oral acquisition contract. Because there can be no oral acquisition contract, the plaintiffs' oral acquisition claim fails. *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001) (breach of contract claim requires the existence of a contract); *see also Giuliani v. Duke Univ.*, No. 08-502, 2010 WL 1292321, at *6 (M.D.N.C. Mar. 30, 2010) (breach of contract claim "d[id] not meet the pleading requirements of *Iqbal* because the [alleged oral] statements d[id] not show a meeting of the minds" or "establish definite and certain terms").[3]

### IV. The Plaintiffs Fail To Allege Facts Showing Mr. DeSario Suffered Severe Emotional Distress.

While the plaintiffs maintain that they have pled the facts necessary to support their emotional distress claims, the entire argument in their Opposition consists of reassertions that Mr. DeSario "suffered humiliation, mental anguish, and emotional and physical distress and ha[s] been injured in mind and body" and that he "suffered severe emotional and physical distress and mental suffering." Opp. at 17; Compl. ¶¶ 90, 91.[4] However, as explained in the opening brief, conclusory allegations of

---

[3] As explained in the opening brief (*see* Mot. at 4 - 5), Mr. DeSario's claim that he entered into an oral agreement for employment is equally implausible in light of the language of his hiring letter, which makes clear he is an at-will employee. Ex. 2.

[4] Although the Complaint alleges claims for IIED and NIED on behalf of both Mr.
(Continued…)

harm such as these are insufficient to plead "severe emotional distress," a necessary element of both intentional and negligent infliction of emotional distress. Rather, to survive a Rule 12 motion, "[f]acts need to be alleged that indicate the nature or extent of any mental distress suffered as a result of the alleged outrageous conduct." *Hamilton v. Prudential Fin.*, No. 07-944, 2007 WL 2827792, at *4 (E.D. Cal. Sept. 27, 2007); *cf. Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1062 (C.D. Cal. 2009) (dismissing plaintiff's IIED claim as "conclusory" where "complaint d[id] not allege any <u>facts</u> that Plaintiff suffered 'embarrassment, humiliation, fear or other forms of emotional distress'") (emphasis added). Numerous district courts sitting in California have concluded that more fulsome allegations of severe emotional distress than those stated by Mr. DeSario failed to satisfy Rule 12. *See, e.g., Webb v. Olive Garden Italian Rests.*, No. 08-4913, 2009 WL 3617781, at *6 (N.D. Cal. Oct. 29, 2009); *Hamilton*, 2007 WL 2827792, at *4.

### V. The Plaintiffs Fail To Materially Address Many Arguments.

The Opposition fails to materially address many of the arguments set forth in the defendants' Motion. For example, the plaintiffs argue that the August Agreement created a fiduciary obligation (Opp. at 23) but they ignore language of that agreement which expressly states that it creates no special relationship between the parties (Mot. at 3 - 4). Similarly, the plaintiffs' Rule 9 argument claims specificity but offers absolutely none, just conclusory allegations. *See* Opp. at 22. And the support identified for the claims against Wolters Kluwer N.V. and the two individual defendants refers only to unsubstantiated claims that they were tangentially involved, while failing to set forth any real facts supporting claims against those parties.

---

DeSario and NBR, the plaintiffs now appear to concede that NBR cannot recover for "emotional distress." *See* Opp. at 17 (claiming "Mr. DeSario suffered extreme emotional distress"); *see also, e.g., Grant v. State Farm Life Ins. Co.*, No. 05-2389, 2007 WL 3119738, at *7 (E.D. Cal. Oct. 23, 2007) (dismissing IIED and NIED claims "since the Estate, as a legal entity, cannot suffer emotional distress").

DATED: April 22, 2010          JENNER & BLOCK LLP


/s/ Brent Caslin

Brent Caslin

Attorneys for Defendants Wolters Kluwer N.V., Wolters Kluwer United States Inc., Aspen Publishers, Inc., Robert Becker, Richard Kravitz, Steve Errick, and Michael Gregory

Defendants' Reply in Support of Motion for Judgment on the Pleadings

**PROOF OF SERVICE**

I, Amanda Navarro, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Jenner & Block LLP, 633 West 5th Street, Los Angeles, California 90071.

On April 22, 2010, I served the document described below on the interested parties in this case:

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

[X]   (U.S. MAIL) By placing the documents listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below. I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited in the United States Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

[X]   (BY ELECTRONIC TRANSMISSION) By causing the documents listed above to be sent by electronic mail to the address set forth below.

> Nicholas S. Nassif
> The Law Office of Nicholas S. Nassif
> 3055 Wilshire Boulevard, Suite 900
> Los Angeles, Ca 90010
> nsnassif@pacbell.net

[X]   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 22, 2010, at Los Angeles, California.

_____
Amanda Navarro

1859730.1