UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-9385-GW(VBKx) | Date | May 10, 2010 |
| Title | *Daniel J. Desario, et al. v. Wolters Kluwer, et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Nicholas S. Nassif
Dalila Kamal-Griffin

Attorneys Present for Defendants:

William K. Pao

**PROCEEDINGS:**   **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (filed 04/05/10)**

Hearing is held. The Court's tentative ruling is circulated and attached hereto. Court hears oral argument.

For reasons stated on the record, Defendant's Motion for Judgment on the Pleadings is **taken under submission.** Court to issue ruling.

: 23

Initials of Preparer   JG

***DeSario, et al. v. Wolters Kluwer, et al.***, Case No. CV-09-9385
Tentative Ruling on Motion for Judgment on the Pleadings

## I. Background

On October 22, 2009, plaintiffs Daniel J. DeSario and National Bar Review, L.L.C. ("National" and, together with DeSario, "Plaintiffs") filed suit in Los Angeles County Superior Court against defendants Wolters Kluwer N.V. ("Wolters N.V."), Wolters Kluwer United States, Inc. ("Wolters U.S."), Aspen Publishers, Inc. ("Aspen"), Emanuel Bar Review ("Emanuel"), Robert Becker, Richard Kravitz, Steve Errick and Michael Gregory (collectively "Defendants"), alleging eight claims for relief: 1) breach of written contract, 2) breach of oral contract, 3) fraud, 4) intentional infliction of emotional distress, 5) negligent infliction of emotional distress, 6) promissory estoppel, 7) breach of the covenant of good faith and fair dealing, and 8) breach of fiduciary duty.[1] All defendants are named on each of the eight claims for relief.

DeSario worked for various companies providing bar review courses from 1982 through 1991 before starting his own tutorial program serving the legal industry, which lasted from 1991 through 2000. *See id.* ¶¶ 14-18. Then, in 2000, DeSario, along with one of his former students, formed National, which "offered a boutique one on one tutorial program that offered complete preparation for all three areas of the California Bar Exam." *See id.* ¶¶ 19-20. Plaintiffs allege that National was very successful, with steadily-increasing revenue. *See id.* ¶¶ 22, 29. During the course of its existence, National created, updated, revised and published various materials to be used in its bar review course and which it used in an attempt to secure its success in the bar review field. *See id.* ¶¶ 24, 28, 60.

In August or September 2007, Kravitz, as a representative of Wolters U.S., contacted DeSario and discussed both hiring DeSario and acquiring National. *See id.* ¶ 31. Meetings between Kravitz and DeSario commenced. *See id.* ¶¶ 32-34. As part of their discussion, Kravitz represented to DeSario that he had acquired 68-70 companies

---

[1] The parties' briefs in connection with the instant motion do not assert that any law other than California law would apply to the claims at issue here.

1

for Wolters U.S. in the prior year and that he had the ability and authority to acquire National. *See id.* ¶ 34. Kravitz also informed DeSario that another division of Wolters U.S., along with Aspen, wanted to launch a bar review course with Steve Emanuel, of defendant Emanuel. *See id.* ¶ 35. Along those lines, Kravitz asked DeSario whether DeSario could fly to New York to meet with him, Errick (his managing director), Becker (the president of Wolters U.S.) and Steve Emanuel. *See id.* DeSario took the trip with the understanding that Wolters U.S. would purchase National, meeting with Steve Emanuel and Kravitz during his trip. *See id.* ¶¶ 36-37, 40.

During the trip, and relying on certain representations made by Kravitz and Errick (including repeated representations concerning the plan to acquire National), DeSario "disclosed information regarding how to gain a competitive advantage in the bar review market" and further disclosed certain intellectual property held by National. *See id.* ¶¶ 38-39, 44. Kravitz, in turn, represented to DeSario that Wolters U.S. would be investing $3 million to $5 million in order to break into the market, not including the purchase of National, that Defendants expected to lose $2 million in the first year, and that "Defendants were in this for the long term, and that they expected it would take at least three to five years to start making a profit to compete in the bar review market," a time horizon that was acceptable to the Dutch owners of Wolters U.S. *Id.* ¶¶ 40-42.

Ultimately, Defendants represented that Wolters U.S. would purchase National and would employ DeSario for life, with a title of National Bar Director and salary in excess of $500,000 per year. *See id.* ¶ 45. Kravitz and DeSario negotiated the contract terms following a meeting with Becker. *See id.* ¶ 47.

The offered terms allegedly included the following: 1) a one-year employment contract for $200,000; 2) a guaranteed bonus of at least $25,000 (which had been reiterated by Errick "many times"); 3) payment of DeSario's car lease payments, car insurance, bar dues, MCLE payments, bar association payments, and rent for National's offices in Los Angeles and Orange County; 4) full integration of National and DeSario into Wolters U.S. "for life" after National was purchased; 5) installation of DeSario as National Bar Director following the expiration of the one-year employment contract, with a minimum base salary of $400,000 to $500,000 (which did not include lecturing, tutoring or training); 6) payment of a percentage of "the gross amount of dollars" from

2

DeSario's help to Wolters U.S. to break into "lucrative bar review markets, such as San Francisco, Florida, Texas and Massachusetts, and continued expansions into California and New York"; 7) Wolters U.S. would purchase National "within a few months, at most," and (as Errick represented) the purchase price would be "between five and six times the highest gross revenue in a year"; 8) that DeSario would be given "the time needed" to run National until the acquisition was completed; and 9) DeSario would be offered an "author's contract" as an additional way to earn compensation and increase his visibility in the bar review world. *Id.* ¶ 48; *see also id.* ¶¶ 52-54, 59.

During the negotiations, DeSario allegedly advised Defendants that he would become a Wolters U.S. employee and would help Defendants implement and complete a bar review program (by, including but not limited to, licensing certain materials and approaches and training and hiring professors and tutors) only if Wolters U.S. purchased National in the expressed time frame and for the expressed price. *See id.* ¶ 49. DeSario also alleges that he informed Defendants that National's revenue would decrease substantially because DeSario would not have the time needed to keep National operating as successfully as it had and that he would no longer receive a salary from National if he were to accept employment with Wolters. *See id.* ¶¶ 49, 51.

DeSario signed an employment agreement with Wolters U.S. on November 27, 2007. *See id.* ¶ 50. As a result, DeSario began working 10-12 hours per day, 5-6 days per week, on the Emanuel program (and on promoting the Emanuel program), from December 2007 through July 2008. *See id.* ¶¶ 55-56. DeSario also began teaching. *See id.* ¶ 61. Throughout the negotiation process and DeSario's organizational and promotional efforts, various defendants reassured DeSario of Defendants' plan to purchase National. *See id.* ¶¶ 49, 57-58.

In July 2008, Errick informed DeSario that Becker wanted one more year of the Emanuel course focusing on just the MBE, meaning that Wolters U.S. would only go into "full service bar review" starting in the Fall of 2010, that Wolters U.S. would not be acquiring National until that time, and that Wolters U.S. would not be able to honor its commitment to offering DeSario the National Bar Director position in November 2008. *See id.* ¶ 62. In conjunction with this decision, Wolters U.S. decided that it could only pay DeSario the promised $500,000 if he was an independent contractor, not an

employee. *See id.* ¶ 63.

As such, Errick altered the terms of DeSario's relationship. Instead of the earlier terms, DeSario was to 1) author multiple titles on multiple books and flash cards, 2) become a consultant to run the "On-Staff Tutor Program," 3) enter into a promotional agreement beginning in September 2008, whereby DeSario would visit all major law schools and law firms in California and New York to recruit students and firms to sign up for future bar review courses, 4) receive percentages of gross revenue as income for each school adopting the Emanuel Bar Review Program, and 5) continue to receive reimbursement for all travel and expenses. *See id.* ¶ 64. When DeSario received the agreements which were said to contain these terms, the terms were different from what was promised, at least insofar as the compensation terms. *See id.* ¶¶ 66-67. After DeSario wrote to Kravitz and Errick on September 16, 2008, about the discrepancies, DeSario was terminated on October 22, 2008. *See id.* ¶¶ 68-70.

## II. Analysis

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed…but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). Any allegations in the answer which contradict the complaint are to be treated as false. *See Alcazar v. Corp. of Catholic Archbishop of Seattle*, 598 F.3d 668, 671 (9th Cir. 2010). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.), *cert. denied*, 493 U.S. 812 (1989); *see also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n.1 (9th Cir. 2008).

Under Rule 12(b)(6), a court is to (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th

Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable[2] and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir.), *cert. denied*, 512 U.S. 1219 (1994), *overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Bell Atlantic*, 127 S.Ct. at 1974).

<u>Can the Court Consider Exhibits 1 and 2 to Defendants' Motion?</u>

The first issue the Court must resolve is whether it can even consider the documents Defendants' rely upon for a substantial part of their argument on this motion.

---

[2] Judicially noticeable facts are permissibly considered in the context of a Rule 12(c) motion. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

5

Plaintiffs argue that Exhibits 1 and 2 to Defendants' motion have not been authenticated and are therefore not introduced in compliance with the rules of evidence. *See* Plaintiffs' Opposition at 13:28-14:11; 15:8-16. In any event, they contend that Exhibit 1 is simply a non-disclosure agreement, that the integration provision relates only to that issue, and that it is an August 2007 agreement, whereas the acquisition was agreed to in November 2007.

Plaintiffs allege and rely upon the existence of a November 2007 employment contract with Wolters N.V. *See* Complaint ¶ 72. Defendants have submitted as Exhibit 2 to their motion a letter agreement written to DeSario on November 7, 2007, and accepted and signed by DeSario on November 12, 2007, which describes at least some of the terms of an employment offer to DeSario.[3] This exhibit is therefore permissibly examined on this motion unless Plaintiffs contest its authenticity. Plaintiffs do argue that Defendants have failed to authenticate the document as an evidentiary matter, but that is not the inquiry on this issue. Plaintiffs do not actually appear to contest the document's authenticity and, in response, do not proffer any other written agreement which they contend is the true agreement that is at the center of their written contract claim. Moreover, Plaintiffs themselves might be understood as relying upon the contents of Exhibit 2 to prove the terms of the employment agreement at issue (which would be consistent with their reference to it in the allegations of their Complaint). *See* Plaintiffs' Opposition at 15:8-9. For these reasons, this exhibit is properly considered here. *See, e.g., Am. Traffic Solutions, Inc. v. Redflex Traffic Sys., Inc.*, No. CV-08-2051-PHX-FJM, 2009 WL 2714017, *1 n.1 (D. Ariz. Aug. 27, 2009) (considering defendants' exhibits in connection with Rule 12(c) motion where, though plaintiff stated that it could not assess the authenticity of the exhibits "at this point," plaintiff had itself relied on the exhibits in opposing defendants' motion); *Stanford v. Home Depot U.S.A., Inc.*, No. 07cv2193-LAB (WMc), 2008 WL 7348181, *1, 5 & n.3 (S.D. Cal. May 27, 2008) (refusing to consider defendant's proffered receipt and invoice where plaintiff disputes their authenticity and

---

[3] Elsewhere in the Complaint Plaintiff references a signature date of November 27, 2007. *See* Complaint ¶ 50. Even there, however, Plaintiff identifies the one term present in the written agreement as the $200,000 salary, which is included in the document Defendants attach as Exhibit 2. Moreover, as noted elsewhere herein, Plaintiffs have not endeavored to provide any other document to the Court as the "authentic" written agreement.

6

presented his own copy of the receipt and invoice), *aff'd*, 2009 WL 4912207 (9th Cir. Nov. 24, 2009).

With respect to Exhibit 1, however, it is not so clear that the Court may consider that document even if Plaintiffs' evidentiary authentication objection is rejected. The Non-Disclosure and Nonsolicitation Agreement attached as Exhibit 1 does not appear to meet the *Lee/Marder* requirements in other respects – Plaintiffs do not appear to have alleged its contents or even to have referenced it,[4] nor would it appear to be "central to" Plaintiffs' claims (though it might be "central to" Defendants' defenses[5]). *See also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (recognizing the permissible consideration of a document if the "plaintiff's claim *depends on* the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint") (emphasis added) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (incorporation by reference may be appropriate if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"); *Branch v. Tunnell* 14 F.3d 449, 453-54 (9th Cir. 1994) (approving standard that permits consideration of a document where it is "pertinent" to the plaintiff's claim, but describing holding as permitting consideration of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading")[6]. Though Plaintiffs do make frequent reference to acquisition discussions in their Complaint, they are always in the form of either negotiations or an oral contract, not a written contract (such as Non-Disclosure and Nonsolicitation Agreement or some other agreement). Even if *Marder* itself (which approved the

---

[4] As noted below, the only written contract that is the subject of Plaintiffs' first claim for relief is the November 2007 employment agreement.

[5] Indeed, though Plaintiffs may benefit from the restricted review permissible at this stage, it would appear that at least some of the terms they allege were breached in their oral contract-based claim would run into substantial difficulty in light of certain terms of the agreement reflected in Exhibit 2. In amending their Complaint in other regards, Plaintiffs might be well-advised to take this into consideration.

[6] *Branch* cites to *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir.1982), a case in which the complaint referred rather extensively to the documents in question.

consideration of a release) suggests that the standard actually allows consideration of documents which are "central to" either the plaintiff's claim or the defendant's defenses, Plaintiffs still do not appear to have referenced this agreement in their Complaint. As such, the Court will not consider Exhibit 1 in assessing Defendants' motion.

<u>Breach of Written Contract</u>

"The standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Abdelhamid v. Fire Ins. Exch.*, 182 Cal.App.4th 990, 999 (2010). In order to plead a written contract, a plaintiff must, in addition to alleging the making of the contract, do one of the following: (1) set forth the contract *in haec verba*; or (2) plead the contract's legal effect by alleging the substance of its relevant terms. *See Construction Protective Servs. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 199 (2002); 4 Witkin, <u>California Procedure: Pleading</u> (5th ed.) §§ 518-20, at 650-52 (stating that the more reasonable approach is that the plaintiff need only allege the promises allegedly breached and others that affect them). Defendants argue that Plaintiffs have neither pled the terms of the written contract in question nor attached the contract to the Complaint nor pled the contract's legal effect. Instead, they have provided only a conclusory reference to an employment agreement. They argue that, in reality, the agreement is only a "hiring letter" and it does not contain the terms Plaintiffs identify.

The only contract that is the subject of Plaintiffs' written contract claim is DeSario's November 2007 employment agreement with Wolters N.V. and the only alleged breach of that contract is the failure to allow DeSario "to devote the required time to [National]...among other breaches." *See* Complaint ¶¶ 3-4, 72, 74. Exhibit 2 to Defendants' motion (which, as set forth above, is appropriate for this Court to consider on this motion under *Lee* and *Marder*) does not contain any term allowing DeSario "to devote the required time to [National]." While Plaintiffs did plead that term as one offered during negotiations, *see* Complaint ¶ 48(6), it is not properly pled as a term of any <u>written</u> contract. As such, Plaintiffs have not stated a viable breach of written contract claim against any party (let alone Wolters N.V., the only defendant alleged to be a party to the written contract identified in paragraph 72 of the Complaint) and the Court need not consider any of the other arguments raised in connection with this claim. The motion

is therefore granted with leave to amend.

### Breach of Oral Contract

Absent consideration of the document attached as Exhibit 1 to Defendants' motion, Defendants are left with only two apparent arguments in connection with Plaintiffs' oral contract claim: first, that an oral agreement of the type alleged here is inherently implausible given the care and attention to detail that normally accompanies such large acquisition deals; and second, that the contract, if any, would only appear to involve Wolters U.S., not any of the other defendants. In response, Plaintiffs simply contend that oral contracts are entered into every day. Though the Court might be skeptical about the existence of an oral agreement containing certain of the terms pled in paragraphs 77 and 78 of the Complaint (the latter of which refers to an agreement with "Defendants," not just Wolters N.V., as in paragraph 77), it should not preclude (based upon a "plausibility" analysis) the allegation that such an oral agreement was involved here. This Court, however, concludes that it is "implausible" that any non-corporate entity-defendant would have entered into an employment and/or acquisition agreement with DeSario and/or National. Unless more is alleged, the individual defendants presumably would not have any interest, in their individual capacity, in hiring DeSario and/or acquiring National. Moreover, none of the individual defendants appear to have any obligations *as individuals* under the alleged agreement. *See* Complaint ¶¶ 77-78.[7] In that respect, therefore, the Court would grant the motion with respect to this claim, with leave to amend.

### Fraud

The elements for pleading fraud under California law are a false representation or omission, knowledge of falsity, intent to defraud, justifiable reliance and damages. *See*

---

[7] To the extent Plaintiffs rest upon some form of agency or alter ego allegation in this case to ascribe liability to the individual defendants (at least), the allegations are wholly conclusory at this stage and would not survive analysis under *Twombly*. If Plaintiffs' purpose is to rely upon California Civil Code section 2330, it is unclear why any of the individual defendants would be considered a "principal" within the meaning of that provision. If instead of (or in addition to) section 2330, Plaintiffs would rely upon California Civil Code section 2343, the only prong of that section that would be conceivably applicable would be the "wrongful in...nature" provision, but even then Plaintiffs would have to allege just what the individual defendant allegedly did as an agent that was "wrongful in...nature" (and that fits within the meaning of that statutory term).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Under federal pleading standards governing fraud claims, "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir.) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)), *cert. denied*, 552 U.S. 985 (2007). Here, Defendants argue that Wolters N.V., Aspen, Becker and Gregory are not attributed with any representations. They seek dismissal of this claim only as to those four defendants.

While the Court would agree with Defendants with respect to Becker and Gregory,[8] it would deny the motion as it relates to Wolters N.V. (and arguably with respect to Aspen). As set forth above, Plaintiffs allege that DeSario had an employment agreement with Wolters N.V. and an agreement (which will not be rejected at this stage, at least for the reasons presently advanced) with at least the entity defendants which encompassed other terms and which relate to certain of the fraudulent representations alleged. If Defendants' argument is that this claim against these four defendants should be dismissed simply because they are not attributed with any alleged misrepresentation, that argument would not preclude this claim from going forward against Wolters N.V. (and potentially Aspen).[9] Otherwise, the motion would be granted with leave to amend.

<u>Intentional Infliction of Emotional Distress ("IIED")</u>

An IIED claim consists of three elements: 1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) the suffering of severe or extreme emotional distress; and 3) actually and proximate causation of the injuries by the outrageous conduct. *See Berkley v. Dowds*, 152 Cal.App.4th 518, 533 (2007); *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). To be "outrageous," the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Fowler v. Varian*

---

[8] As to Becker and Gregory, *see also supra* Footnote 7.

[9] Alternatively, the Court might conclude that there are insufficient allegations tying the speakers of the alleged misrepresentations to Aspen (which is alleged to merely be a subsidiary of Wolters U.S., *see* Complaint ¶ 5) such that it should enjoy the benefit of a dismissal (with leave to amend) to the same degree as Becker and Gregory.

*Associates, Inc.*, 196 Cal.App.3d 34, 44 (1987). Whether a defendant's conduct can reasonably be found to be extreme and outrageous is a question of law that must initially be decided by the court; but, if reasonable persons would differ, it is for a jury to determine. *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 499 (1970); *Berkley*, 152 Cal.App.4th at 534.

      Defendants argue that a readjustment of a corporation's business plans such as occurred here cannot amount to the extreme and outrageous conduct necessary to make out an IIED claim. In addition, they argue that DeSario has not pled any facts, only conclusions, in support of the severe emotional distress element. In response, Plaintiffs argue that the conduct at issue – which they claim caused DeSario to abandon his own company, join a competitor, develop the competitor's business, incur debts and share protected material – suffices, especially because they also assert that it was clear the defendants never actually intended to honor their agreements.

      With respect to their allegations of emotional distress, Plaintiffs direct the Court to paragraphs 90 and 91 of the Complaint. Yet, the allegations in those paragraphs (as Defendants argue) are merely conclusory. This Court would require more factual specificity here. A strict application of *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), would call for more factual detail as to this element. Such an approach is also supported by California law. *See Bogard v. Employers Cas. Co.*, 164 Cal.App.3d 602, 617-18 (1985). In addition, while no case exactly on point could be located, it is noted that the California courts have not found conduct in the course of business relationships to be an area where a claim of infliction of emotional distress has much traction. For example, in *Unterberger v. Red Bull North America, Inc.*, 162 Cal.App.4th 414, 423 (2008), plaintiff exclusive distributors sue defendant energy drink company for emotional distress after the latter terminated the distribution relationship. Plaintiffs asserted that, after defendant had assured them that they were doing a good job and that a written contract was forthcoming, defendant altered the "credit terms to bring extreme financial pressure on plaintiffs to quite, and then refus[ed] to ship the paid for product anyway, meaning we obviously would not be able to service our customers even though we arranged costly financial emergency financing . . . ." *Id.* The court there held that the conduct could not be regarded as so extreme and outrageous as to permit recovery. *Id.*

The Court will grant the motion to dismiss with leave to amend.[10]

<u>Negligent Infliction of Emotional Distress ("NIED")</u>

In connection with Plaintiffs' NIED claim (which is, in fact, merely a variant of an ordinary negligence claim), Defendants repeat their IIED argument that DeSario has not pled facts in support of his "severe" emotional distress element. They also argue that, with certain exceptions not applicable here, an NIED claim will not lie where physical injury is absent. Defendants are correct as to the former argument as addressed above and as to the latter argument as well. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (2003); *Butler-Rupp v. Lourdeaux*, 134 Cal.App.4th 1220, 1228 (2005). Though it is very unlikely that Plaintiffs can amend to allege that defendants' conduct caused (or at least plausibly threatened to cause) physical injury, they will be given leave to amend to attempt to do so if they can within the confines of Fed. R. Civ. P. 11.

<u>Breach of the Covenant of Good Faith and Fair Dealing</u>

Plaintiffs allege that Defendants breached "the duty to act in good faith by, among other things, inducing...DeSario to enter in the employment agreement and, as a result, devote less energies to [National]." Complaint ¶ 107. Defendants argue that there can be no breach of the implied covenant of good faith and fair dealing if the complained-of activity occurred during negotiations. In addition, if the claim is based on an existing contract, they have not shown that the contract contains the term (preventing the devotion of time and energy to National) the enjoyment of which Plaintiffs appear to allege Defendants were attempting to frustrate.[11] Of course, the claim must be based on an existing contract, otherwise there is no contract as to which the covenant may be implied. Here, at the very least there is an existing oral contract (or at least Defendants have not successfully demonstrated otherwise thus far), and one which contains the term Plaintiffs allege was frustrated (or at least a synonymous term). *See* Complaint ¶¶ 48(6), 78(6).

As with the contract-based claims, however, Defendants again argue here that this

---

[10] Though Defendants did not raise the point until their Reply, it would seem self-evident that Plaintiffs cannot maintain either of their emotional distress claims on behalf of National, an entity.

[11] These are the only arguments Defendants raise with respect to this claim. They have not raised an argument centering on, for example, *Cates Construction, Inc. v. Talbot Partners*, 21 Cal.4th 28, 43 (1999) and *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 682-700 (1988).

claim would lie only against the contracting party, whom they contend is Wolters U.S. As set forth above, however, the only defendants the Court could presently conclude would not be parties to the oral contract would be the individual defendants. Adherence to that view would therefore require some measure of amendment, even ignoring the merits of the parties' other arguments in connection with this claim. For that reason, therefore, the Court will grant the motion to dismiss with leave to amend.

### Breach of Fiduciary Duty

Defendants argue that Plaintiffs have not pled the existence of a duty, pointing out that neither an ordinary contractual relationship nor an employer/employee relationship would suffice. *See Oakland Raiders v. Nat'l Football League*, 131 Cal.App.4th 621, 633-34 (2005); *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal.App.2d 123, 129 (1966). In particular, they argue that the existence of a fiduciary relationship would be counterintuitive in a situation where competitors are negotiating an acquisition. This makes some sense.

In attempting to identify a duty, Plaintiffs point to the Non-Disclosure and Nonsolicitation Agreement attached as Exhibit 1 to Defendants' motion. That is not pled in (nor relied upon nor referenced in) Plaintiffs' Complaint, however, and (as noted above) the Court will not consider it on this motion. As such, Defendants' motion will be granted as to this claim, with leave to amend.

### Wolters N.V., Gregory and Becker

Finally, Defendants argue that Plaintiffs have not stated any claims against Wolters N.V., Gregory and Becker. With respect to Gregory and Becker, Defendants are correct (and Plaintiffs admit as much with respect to Gregory). *See supra* Footnotes 7-8. As to Wolters N.V., however, Plaintiffs have stated at least one claim (or at least Defendants have not successfully demonstrated to the contrary at this point). Plaintiffs will be granted leave to amend in this area as well.