Brent Caslin (Cal. Bar No. 198682)
bcaslin@jenner.com
William K. Pao (Cal. Bar No. 252637)
wpao@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3500
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

Attorneys for Defendants Wolters Kluwer N.V.,
Wolters Kluwer United States Inc., Aspen
Publishers, Inc., Richard Kravitz, Steve Errick,
and Michael Gregory

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL J. DESARIO and NATIONAL BAR REVIEW, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> WOLTERS KLUWER, a Netherlands Corporation; WOLTERS KLUWER UNITED STATES, INC., a New York Corporation; ASPEN PUBLISHERS, INC., a Delaware Corporation; RICHARD KRAVITZ, an individual; STEVE ERRICK, an individual and MICHAEL GREGORY, <br><br> Defendants. | Case No. CV 09-9385-GW(VBKx) <br><br> The Honorable George H. Wu <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION** <br><br> Amended Complaint Filed:  June 1, 2010 <br><br> Trial Date:  November 9, 2010 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ...................... 1

FACTUAL BACKGROUND ................................................. 2

    I.     The Case Before The Court. ................................................. 2

    II.    The Plaintiffs Delayed Initial Disclosures And Preparation. ............... 4

    III.   The Plaintiffs Delayed Written Interrogatories ..................................... 4

    IV.   The Plaintiffs Delayed Written Document Requests ........................... 5

    V.    The Plaintiffs Delayed And Continue To Delay Depositions. .............. 8

    VI.   The Plaintiffs Have Been Threatening To Move To Extend The Discovery Cut-Off Date For Almost A Month ..................................... 9

ARGUMENT ................................................. 11

    I.     The Standards For Ex Parte Relief ..................................... 11

    II.    The Motion To Extend The Discovery Cut-Off ................................. 12

        A.    The Plaintiffs Will Not Be Irreparably Harmed ...................... 12

            1.    The Discovery Cut-Off Is Over A Month Away. .......... 12

            2.    The Plaintiffs' Motion Is Meritless ................................. 13

        B.    The Discovery Cut-Off "Crisis" Is Of The Plaintiffs' Own Making ................................. 17

    III.   The Motion For A Protective Order Postponing Depositions Of Plaintiffs ................................. 17

        A.    The Plaintiffs Will Not Be Irreparably Harmed ...................... 17

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      B.     The Plaintiffs Created The Predicament Of Which They Complain. ........................................................................... 18

IV.    The Motion To Compel Depositions In Los Angeles. ....................... 19

      A.     There Are No Depositions To Compel. .................................... 20

      B.     The Plaintiffs' Position Regarding Location Is Meritless........ 20

      C.     The Plaintiffs Could Have Followed The Proper Procedure. ... 23

CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

CASES

*Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp.,*
    676 F. Supp. 2d 857 (N.D. Cal. 2009) ................................................................ 6

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation,*
    No. 08-1967, 2010 WL 2134275 (W.D. Mo. May 26, 2010)........................... 16

*Capital Bank PLC v. M/Y Birgitta,*
    No. 08-5893, 2010 WL 2132473 (C.D. Cal. May 24, 2010)............................ 11

*Costner v. MRA Funding Corp.,*
    No. 09-649, 2009 WL 1106815 (C.D. Cal. Apr. 23, 2009)................................ 13

*EEOC v. Denny's, Inc.,*
    No. 06-2527, 2009 WL 3246940 (D. Md. Oct. 2, 2009) .................................. 23

*Grey v. Continental Marketing Associates, Inc.,*
    315 F. Supp. 826 (N.D. Ga. 1970) .............................................................. 21, 22

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.,*
    No. 06-2879, 2007 WL 3340935 (E.D. Cal. Nov. 9, 2007)......................... 12, 19

*In re Imperial Credit Industries, Inc. Securities Litigation,*
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) .......................................................... 13

*Intermagnetics America, Inc. v. China International Trust & Investment Corp.,*
    101 B.R. 191 (C.D. Cal. 1989)....................................................................... 17

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992)........................................................................... 14

*McDougal-Wilson v. Goodyear Tire & Rubber Co.,*
    232 F.R.D. 246 (E.D.N.C. 2005) ................................................................... 21

*Metrex Research Corp. v. United States,*
    151 F.R.D. 122 (D. Colo. 1993)..................................................................... 21

*Mission Power Engineering Co. v. Continental Casualty Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) ................................................. 11, 12, 13, 17

*Moss v. Blue Cross & Blue Shield of Kansas, Inc.*,
No. 06-4105, 2007 WL 141020 (D. Kan. Jan. 17, 2007) ........................ 18, 22

*O'Sullivan v. Rivera*,
229 F.R.D. 187 (D.N.M. 2004) ................................................................. 21, 22

*In re Outsidewall Tire Litigation*,
--- F.R.D. ----, 2010 WL 1849035 (E.D. Va. 2010) ................................... 21

*Resource Associates Grant Writing & Evaluation Services, LLC v. Maberry*,
No. 08-552, 2008 WL 5978896 (D.N.M. Dec. 8, 2008) ............................. 18, 19

*Salter v. Upjohn Co.*,
593 F.2d 649 (5th Cir. 1979) ..................................................................... 21

*Sentry Insurance v. Shiver*,
164 F.R.D. 255 (D. Kan. 1996) .................................................................. 22

*Shepherd v. U.S. Bank National Association*,
No. 09-7742, 2009 WL 3514550 (C.D. Cal. Oct. 26, 2009) ...................... 17

*VFS Financing, Inc. v. CHF Express, LLC*,
620 F. Supp. 2d 1092 (C.D. Cal. 2009) ........................................................ 6

*Zhou v. Pittsburgh State University*,
252 F. Supp. 2d 1194 (D. Kan. 2003) ........................................................ 22

**OTHER AUTHORITIES**

California Code of Civil Procedure § 2019.210 ........................................ 10

Central District Local Rule 6 ................................................................... 13

Central District Local Rule 7 ................................................................... 13

Central District Local Rule 37 ....................................................... 11, 12, 19, 23

Federal Rule of Civil Procedure 16 ......................................................... 14

Federal Rule of Civil Procedure 26 ................................................... 11, 18

Federal Rule of Civil Procedure 30 ......................................................... 12

Defendants' Opposition to Plaintiffs' Ex Parte Application

Federal Rule of Civil Procedure 33.................................................. 12, 15

Federal Rule of Civil Procedure 34.................................................. 12, 16

Federal Rule of Civil Procedure 45............................................ 12, 21, 23

Hon. George H. Wu, Procedures and Schedules................................. 11, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

The plaintiffs filed this case in October 2009.  In November, December, January, February, March, and most of April they did almost nothing to prosecute their case.  They ignored requests for depositions and discovery requests (literally, the plaintiffs have never responded in writing to document requests that were served in February), responded late to motion papers and other filings, and generally sat on their hands while most of the discovery period passed them by.[1]

The plaintiffs awoke in late April, when they apparently realized time was running out.  They added an aggressive lawyer to the case and began making numerous unfocused demands and wild accusations.  Although this is an uncomplicated dispute about the alleged acquisition of a closely held business and the employment of one of its principals, the plaintiffs sent ten sets of interrogatories and demanded documents about international corporate relationships and other irrelevant topics.  They requested from the defendants every document that might in any way relate to (1) the plaintiffs or (2) the defendants' bar review business.  In a classically improper "apex deposition" tactic, they requested the deposition of a CEO of an ultimate corporate parent in the Netherlands, although she has nothing to do with this dispute.  The plaintiffs then demanded that all depositions be conducted in Los Angeles, without regard to where the witnesses live and work, so that the plaintiffs' lawyers would not have to travel.  They topped that off with the revelation in early June that the plaintiffs are withholding documents from discovery based on a fictional "impeachment privilege."

As a consequence of this odd combination of both neglect and inappropriate hyperactivity, we have begun delivering joint discovery stipulations (motions to compel) under the process required by the local rules.  The plaintiffs have served no

---

[1] The plaintiffs did not even show up for the initial status conference until the Court instructed the defense to telephone and ask that someone appear.

Defendants' Opposition to Plaintiffs' Ex Parte Application

1    discovery motions or joint stipulations.  Instead, they send emails with personal

2    attacks and false accusations that the defendants are producing either too much or not

3    enough discovery (sometimes on the same issue).

4         There is no emergency here.  There is nothing "horrendous" or "outrageous"

5    about this case.  The plaintiffs have plenty of time to take the depositions they want to

6    take, review the documents they demanded from the defendants, or even file discovery

7    motions using the process called for by the local rules.  Candidly, they have some

8    work to do because they sat on their rights for so many months, but that work can be

9    accomplished within the time period left for discovery.  If the plaintiffs want to keep

10   the case going, we respectfully suggest that the plaintiffs' counsel adjust their summer

11   vacation schedules and manage discovery through the schedule the Court entered long

12   ago.[2]

13        This opposition brief is set out below in two primary sections, which are a

14   factual background and an argument.  We apologize for its length, but the plaintiffs'

15   papers level serious accusations, many of which are just plain wrong.  None of them

16   justify any change to any briefing schedule or the discovery schedule in this case.  We

17   begin with a thorough summary of the facts.

18   **FACTUAL BACKGROUND**

19   **I.   The Case Before The Court.**

20        Although the plaintiffs have pled numerous claims, the plaintiffs' case rests on

21   the following story:  (1) the defendants somehow orally agreed to buy Mr. DeSario's

22   _____

23   [2] Over the past month, the plaintiffs' lawyers have more than once admitted the real

24   reason they want to continue the discovery cut-off is that the plaintiffs' two lawyers,
     having dilly dallied for many months, do not want to adjust their vacation plans and

25   wish, essentially, to take off the month of July.  *See* Pao Decl. ¶¶ 47, 48.  In particular,
     although not mentioned in their papers, the plaintiffs continually cited their vacation

26   schedules as the primary concern in scheduling depositions in July, rather than some

27   other case-related reason.  *See id.*  We understand one of them has already departed to

28   France for a vacation.  *See id.*

2

1   bar review business for millions of dollars and (2) the defendants agreed to employ

2   Mr. DeSario for a long period of time, and possibly the remainder of his life.  FAC ¶¶

3   36, 95-101.  This story is fiction.  In August 2007, the parties reached a written

4   agreement (the "August Agreement") that explicitly provides their exploratory

5   discussions created no obligation to buy Mr. DeSario's company and that any

6   potential acquisition must be accomplished in writing.[3]  Pao Decl. Ex. 1.  In an

7   employment form, Mr. DeSario confirmed his view of that relationship when he

8   responded to a question regarding why he was leaving his prior employment by

9   answering "*potential* buyout by your company."  *Id.* Ex. 2 (emphasis added).

10         As for Mr. DeSario's claim that he was promised long-term employment or

11  employment "for life," that claim is contradicted by his hiring letter, which

12  specifically provides that "the Company or you have the right to terminate the

13  employment relationship at will."  *Id.* Ex. 3.  The employment form that Mr. DeSario

14  completed also made clear that he would be an employee-at-will and had no guarantee

15  of any future employment.[4]  The plaintiffs admit that there are no written agreements

16  to support their case.  *See id.* Ex. 4.

_____

18  [3]  The August Agreement makes clear that:

20         *No agreement or legal obligation with respect to any potential legal*
       *transaction* or business relationship between the parties and no
21     representations or warranties by either party with respect to any
       Confidential Information or otherwise *shall be deemed to exist unless and*
22     *until a Definitive Agreement has been entered into* between the parties,
       and then only in accordance with the provisions thereof and applicable
23     law.  For purposes hereof, the term *"Definitive Agreement" does not*
       *include* a letter of intent or any other preliminary written agreement, nor
24     does it include any actual or *purported offer or bid or written or verbal*
       *expression of acceptance* thereof.

25  Pao Decl. Ex. 1 at 2 (emphasis added).  There was never a "Definitive Agreement" or
26  even a draft of such an agreement.

27  [4]  The statement reads:  "the employer reserves the same right to terminate my
    employment at any time, with or without cause and with or without notice."  Pao
28  Decl. Ex. 2 at 7.

## II.   The Plaintiffs Delayed Initial Disclosures And Preparation.

This case began when the plaintiffs filed their complaint on October 22, 2009. *Id.* Ex. 5.  In November 2009, the plaintiffs served some of the defendants.  The plaintiffs did *nothing* to press their case in December.  The plaintiffs did *nothing* to advance their case in January 2010.  In February, after the Court set a scheduling conference, the defendants had to contact the plaintiffs more than a half dozen times to convince them to participate in a Rule 26 conference.  *Id.* ¶ 8; *see, e.g., id.* Ex. 6. During that conference, the parties agreed to a discovery cut-off of June 30, 2010 (earlier than the cut-off now in place).  *Id.* Ex. 7 at 3.  On February 22, this Court held a scheduling conference, but the plaintiffs did not attend until the defendants left the courtroom and telephoned them from the hallway on instruction from the Court. Plaintiffs' counsel then showed up for the conference.  Other than this one tardy appearance, the plaintiffs did *nothing* in February to move this case forward.

On March 5, 2010, the defendants sent the plaintiffs a draft protective order governing confidentiality.  *Id.* Ex. 8.  The plaintiffs made no revisions to the draft but still took over a month to sign it.  *See id.* Ex. 9.  The plaintiffs were similarly slow in responding to an important stipulation regarding electronic discovery, which cost the defendants dearly as they were forced to alter an electronic data disaster-recovery system because of this lawsuit.[5]

## III.   The Plaintiffs Delayed Written Interrogatories.

The defendants served their first set of special interrogatories on February 9. *Id.* Ex. 10.  Responses were due on March 15.  *Id.* ¶ 16.  The due date for the plaintiffs to respond to the interrogatories came and went.  It was not until April 26, after a

---

[5] Altering the backup tape system cost a substantial amount but the tapes contained only a small subset of relevant files.  Pao Decl. ¶ 10.  The plaintiffs initially agreed that preserving the tapes was unnecessary but then changed their minds.  *Id.*  The defendants incurred tens of thousands of dollars on backup-tape costs over a period of months, until the plaintiffs finally signed a stipulation regarding the tapes.  *Id.*

1   number of requests and demands from the defendants, that the plaintiffs finally served
2   their responses and objections to the interrogatories. *Id.* ¶ 17 & Ex. 11.  The
3   plaintiffs' responses were six weeks late.

4        The plaintiffs, on the other hand, did not serve interrogatories in November,
5   December, January, February, or March.  Almost all of April passed before the
6   plaintiffs finally took their first steps to serve discovery.  On April 30, the plaintiffs
7   served the defendants with six sets of interrogatories. *Id.* Ex. 12.  On May 11, the
8   plaintiffs served the defendants with another four sets of interrogatories. *Id.* Ex. 13.
9   The defendants provided timely objections and responses to all ten sets of
10  interrogatories. *Id.* Ex. 14.

11  **IV.   The Plaintiffs Delayed Written Document Requests.**

12       The defendants served their first set of document requests to the plaintiffs on
13  February 11. *Id.* Ex. 15.  The plaintiffs did not object or respond in writing to those
14  document requests. *Id.* ¶ 21.  In fact, the plaintiffs have *never* provided objections or
15  responses to the defendants' first set of document requests. *See id.*  When the
16  defendants inquired on April 5 about the plaintiffs' responses to the requests, the
17  plaintiffs ignored that request, too. *Id.* ¶ 22.  On April 13, the plaintiffs telephoned to
18  ask for an extension to file their Opposition to the defendants' Motion for Judgment
19  on the Pleadings. *See id.* Ex. 17.  The defendants granted the extension but renewed
20  their request for an answer on the outstanding document requests. *Id.* ¶ 23.  The
21  plaintiffs promised in response to produce "all responsive documents" on or before
22  April 19. *See id.*  Contrary to their promise, however, the plaintiffs delivered only a
23  small part of their production on April 19. *Id.* ¶ 24.  What they brought, they failed to
24  Bates label or number.  This put the defendants in the absurd position of having to
25  place Bates numbers and labels on the *plaintiffs'* production. *Id.*  We sent the
26  plaintiffs a copy of the Bates numbered documents. *Id.*

27       During the same meet-and-confer, the plaintiffs again reassured the defendants
28  that they would hold nothing back and would produce "everything" responsive. *Id.*

1   The defendants agreed to wait before filing a motion to compel. *Id.* Again, however,

2   the plaintiffs did not live up to their promise. They intermittently produced small

3   trickles of documents over the course of the following six weeks. *Id.*[6]

4        On June 3, *almost four months after they were served with the document*

5   *requests*, the plaintiffs served a notice revealing that they are withholding "documents

6   that Plaintiffs claim are privileged under attorney-client privilege and the attorney

7   work product privilege." *Id.* Ex. 19 at 2. That same day, the plaintiffs asserted that

8   they are also withholding documents *from production* that they intend to use to

9   impeach witnesses *at trial*, claiming reliance on a nonexistent "impeachment

10  privilege" as a basis for withholding documents from the discovery process. *Id.* Ex.

11  20. As a result, the defendants had no choice but to start the process of filing a joint

12  stipulation to compel the production of documents and information responsive to their

13  first sets of requests. *Id.* Ex. 21.[7] Although it should go without saying, it is worth

14

15  [6]  The Kamal-Griffin declaration attached to the Discovery Motion purports to attest to

16  events that occurred at the April meet-and-confer regarding the plaintiffs' document
    production. Kamal-Griffin Decl. ¶¶ 11-13. But Ms. Kamal-Griffin was not at the

17  meet-and-confer and so lacks any personal knowledge as to what occurred. Pao Decl.

18  ¶ 24. In fact, the meet-and-confer Ms. Kamal-Griffin referenced occurred on April
    19, 2010, not on April 26, 2010, as she incorrectly, but perhaps unsurprisingly, states

19  in the declaration. *Id.* & Ex. 18. We respectfully request that all references to the

20  April meet-and-confer discussion be stricken from the declaration. *See Beijing Tong
    Ren Tang (USA) Corp. v. TRT USA Corp.*, 676 F. Supp. 2d 857, 861 (N.D. Cal. 2009)

21  (granting motion to strike statements in declaration because the declarant provided no

22  basis demonstrating personal knowledge); *see also VFS Financing, Inc. v. CHF
    Express, LLC*, 620 F. Supp. 2d 1092, 1097-98 (C.D. Cal. 2009) (sustaining objections

23  to statements when "it [was] patently clear that [the declarant] has no personal

24  knowledge of any of the so-called facts she recites in her declaration").

25  [7]  In Ms. Kamal-Griffin's declaration, the plaintiffs claim that they are withholding
    documents only on the basis of the attorney-client privilege and the attorney-work

26  product doctrine and information pertaining to Mr. DeSario's litigation and

27  employment history. *See* Plaintiffs' Motion For: An Order Extending Discovery Cut-
    Off Date; A Protective Order Re Depositions; An Order That The Defendants'

28  Depositions Be Taken In Los Angeles ("Disc. Mot.") at 19. That privilege claim is
                                                                        (Continued...)

1  noting that the plaintiffs have not produced a privilege log despite requests that they

2  do so. *Id.* ¶ 49.

3      As for their document requests, the plaintiffs did not serve any requests in

4  October, November, December, January, February, March, or most of April. On April

5  30, more than six months into the case, the plaintiffs at last served document requests.

6  *Id.* Ex. 22. What they lacked in timeliness they made up for in breadth. The

7  plaintiffs' document requests were broad, asking, for example, for "ALL

8  DOCUMENTS that CONCERN OR RELATE to DESARIO from January 1, 2007 to

9  the present," and "ALL DOCUMENTS that CONCERN OR RELATE to NBR from

10  January 1, 2007 to the present." *Id.* at Requests, 1, 2. On May 7, the plaintiffs served

11  a second set of equally broad requests. *Id.* Ex. 23. As a result, the defendants had to

12  spend tens of thousands of dollars reviewing over 30,000 documents (over 100,000

13  pages) to respond to these requests. *Id.* ¶ 30. The defendants timely served objections

14  and responses to the plaintiffs' document requests on June 1 and June 9 and began

15  producing documents in response to the requests. *See id.* Exs. 24, 25. Ironically, the

16  plaintiffs immediately began complaining about the size of the defendants'

17  production, claiming it was too large. *See, e.g., id.* Ex. 26 (plaintiffs' counsel

18  claiming that the defendants "ha[ve] basically sentenced [her] to home confinement

19  for a while [sic]" because of the "nearly 40,000.00 pages of documents to review").

20  The defendants intend to produce more documents next week and will complete their

21  document production very soon. Despite the plaintiffs' over-the-top charges, the

22  defendants have reviewed a large amount of data in response to the plaintiffs' broad

23  requests and produced documents based on thoughtful boundaries set out in the

24  defendants' objections and responses.

25

26  _____

27  incomplete. The plaintiffs have stated very clearly that they are also withholding

28  documents on the basis of an alleged "impeachment privilege." *See* Pao Decl. Ex. 20.

## V.     The Plaintiffs Delayed And Continue To Delay Depositions.

The defendants began asking about depositions at the Rule 26 conference in February 2010. *Id.* ¶ 11. At that time, the parties discussed spending a week on the East Coast for depositions. *Id.* The plaintiffs never stated during this conference that they believed the East Coast witnesses should come to Los Angeles. *Id.* Shortly thereafter, the defendants emailed the plaintiffs to further discuss and finalize the parties' deposition schedule. *Id.* Ex. 27. The plaintiffs did not respond to the request. *Id.* ¶ 34. February came and went with no response about depositions. March also came and went, and so did April. As the plaintiffs did with every other discovery method, they did nothing during this time period to move the case forward.

What happened next regarding depositions was even more puzzling. On May 21, the plaintiffs asked for dates in July for several defense witnesses. *Id.* Ex. 28. Three days later, however, the plaintiffs' focus shifted entirely away from the percipient witness depositions to the depositions of various officers of the corporate defendants. *Id.* ¶ 36 & Ex. 29. The plaintiffs demanded an "apex" deposition of the CEO of Wolters Kluwer N.V., the ultimate Dutch parent company of numerous subsidiaries around the world, and focused intensely on the issue. *Id.* After a meet-and-confer process in which the defendants explained the impropriety of apex depositions, and their intention to seek a protective order, the plaintiffs withdrew their demands for these depositions. *Id.* ¶ 36.

With the apex deposition dispute resolved, the parties again discussed fact witness deposition dates in July. The defendants even offered specific dates for specific witnesses. *See, e.g., id.* Ex. 30 (offering July 2 for Mr. Kravitz's deposition), Ex. 31 (offering July 6, 7, or 8 for Mr. Gregory). Then, on May 25, the plaintiffs suddenly demanded early June depositions and even sent a notice for Mr. Kravitz's deposition in Los Angeles despite knowing that he resides in New York. *Id.* Ex. 32. After the defendants objected to the notice, and started yet another meet-and-confer

8

1  discussion on new dates in June and the location issue, the plaintiffs changed their

2  minds and called off everything because they were purportedly too busy. *Id.* ¶ 39.

3       The plaintiffs' approach to depositions of their own witnesses has been as

4  chaotic as their approach to defense witnesses. On May 26, the plaintiffs themselves

5  "propose[d] that the defendants depose Ms. Nick and Mr. DeSario in late June." *Id.*

6  Ex. 33. The following day, however, the plaintiffs changed their minds and told the

7  defendants that Ms. Nick's and Mr. DeSario's depositions could not be held earlier

8  than late July. *Id.* ¶ 41. Fearing that this was too close to the discovery cut-off, the

9  defendants requested that the plaintiffs produce Ms. Nick and Mr. DeSario on the

10 dates that they had originally proposed. *Id.* ¶ 42. On May 28, the defendants served a

11 deposition subpoena on Ms. Nick for June 18. *Id.* Ex. 34. On June 1, the defendants

12 served a deposition notice on Mr. DeSario for June 23. *Id.* Ex. 35.

13      The parties met and conferred numerous times on the issue of Mr. DeSario's

14 and Ms. Nick's deposition dates. The plaintiffs asked for deposition dates of June 29

15 and 30, which the defendants accepted. *See id.* Ex. 36. True to form, the plaintiffs

16 then reversed course again, serving objections and insisting that depositions be taken

17 in August, *after the discovery cut-off.* *Id.* Ex. 37. The purported, and clearly

18 contradictory, reasons for the change: (1) the plaintiffs are overwhelmed by the

19 discovery the defendants have produced thus far and (2) the defendants have not

20 produced enough discovery. *See id.* If the plaintiffs do not attend the depositions,

21 particularly because they were noticed for days that the parties agreed on, the defense

22 will bring the issue to the Discovery Magistrate under the procedures set forth in the

23 local rules.

24 **VI.  The Plaintiffs Have Been Threatening To Move To Extend The Discovery**
25 **Cut-Off Date For Almost A Month.**

26      On May 21, the plaintiffs warned they were filing "a motion to extend the

27 discovery cut-off date." *Id.* Ex. 28. One of the primary reasons the plaintiffs gave

28 was that the plaintiffs' counsel do not wish to adjust vacation schedules during the

1 │ month of July. *Id.* ¶¶ 47, 48.  The plaintiffs did not file their motion.  On June 5, the

2 │ plaintiffs again threatened to "file a motion to extend the discovery cut-off date." *Id.*

3 │ Ex. 38.  The plaintiffs again did not file their motion.  The plaintiffs finally filed this

4 │ motion on June 17, almost a month after they first indicated they wanted to move the

5 │ discovery cut-off.  The application identifies an 8:30 a.m. hearing date for June 17,

6 │ 2010, but the defendants were not served with the motion until approximately 5:00

7 │ p.m. on June 17.  Plaintiffs' Ex Parte Application For An Order Shortening Time To

8 │ Hear Plaintiffs' Motion For: An Order Extending Discovery Cut-Off Date; A

9 │ Protective Order Re Depositions; An Order That The Defendants' Depositions Be

10 │ Taken In Los Angeles ("App.") at 1.

11 │ **ARGUMENT**

12 │ What follows is a four-part argument section.  First, the defendants explain the

13 │ prerequisites that must be met to justify ex parte relief.  The brief then shows why the

14 │ plaintiffs have failed to satisfy those standards.

15 │ The plaintiffs' Discovery Motion seeks three forms of relief:  (1) a 90-day extension

16 │ of the discovery cut-off; (2) a protective order to delay all depositions; and (3) an

17 │ order requiring depositions of the defense witnesses in Los Angeles.  *See* App. at 2.[8]

18 │ Here, the plaintiffs have not shown that they will be "irreparably prejudiced" if

19 │ the Court declines to hear their Discovery Motion on an expedited basis or that they

20 │

21 │ ────────────────────

22 │ [8] The plaintiffs' ex parte application references a concurrently filed motion for "an
     │ order granting the plaintiffs' partial motion to compel responses to the plaintiffs'
23 │ request for the production of documents and to the plaintiffs' interrogatories that the
     │ defendants have withheld on CCP 2019.210 grounds."  *See* App. at 6-7.  But the
24 │ plaintiffs have not filed this motion, and nowhere in the concurrently-filed motion do
     │ the plaintiffs seek this relief.  *See* Discovery. Mot.  There may be good reasons why
25 │ the plaintiffs did not press the trade secret issue in their brief.  The plaintiffs' alleged
     │ trade secret disclosures claim as trade secrets common knowledge such as holding
26 │ promotional events for students where "either beer or soda is provided."  Pao Decl.
27 │ Exs. 11, 39.

28 │

Defendants' Opposition to Plaintiffs' Ex Parte Application

1    are "without fault" in creating their predicament.  In any event, the plaintiffs' motion

2    is meritless because the plaintiffs were anything but diligent from October through

3    April, and sufficient time remains for both discovery and motions.  The plaintiffs'

4    deposition-related requests for relief are equally meritless.  The plaintiffs' claimed

5    desire to review all responsive documents prior to their depositions does not amount

6    to "good cause" as required by Rule 26.  And, as the plaintiffs' motion acknowledges,

7    "unusual circumstances are required to justify putting [a] party to [the]

8    inconvenience" of traveling to a deposition scheduled other than "in the district in

9    which he or she resides or is employed or has a place of business."  Disc. Mot.. at

10   15:9-12.  There are no "unusual circumstances" here.

11   **I.      The Standards For Ex Parte Relief.**

12          As this Court has explained, ex parte applications are proper only for

13   "extraordinary relief."  George H. Wu, Procedures and Schedules (cautioning that

14   "[s]anctions may be imposed for misuse of ex parte applications").  Because of their

15   "extraordinary" nature, a petitioner must satisfy a high threshold of necessity before a

16   Court is willing to grant ex parte relief.  *See Mission Power Eng'g Co. v. Cont'l Cas.*

17   *Co.*, 883 F. Supp. 488, 490, 492-93 (C.D. Cal. 1995) (confirming that "[e]x parte

18   motions are rarely justified"); *see also* C.D. L.R. 37-3.  Specifically, to justify their

19   request for ex parte relief, the plaintiffs must show that: (1) they "will be irreparably

20   prejudiced if the underlying motion is heard according to regular noticed motion

21   procedures," and (2) they are "without fault in creating the crisis that [allegedly]

22   requires ex parte relief, or that the crisis occurred as a result of excusable neglect."

23   *Mission Power*, 883 F. Supp. at 492; *see also Capital Bank PLC v. M/Y Birgitta*, No.

24   CV 08-5893, 2010 WL 2132473, at *1 (C.D. Cal. May 24, 2010).  The plaintiffs must

25   substantiate these showings by "deposition transcripts or by affidavits or declarations

26   whose contents would be admissible if the deponents, affiants, or declarants were

27   testifying in court."  *Mission Power*, 883 F. Supp. at 492.

28

1   The plaintiffs' conclusory assertion that "good cause exists" is unpersuasive in

2   light of their utter failure to produce evidence, or even allege, that they will be

3   "irreparably prejudiced" by the Court's failure to hear their motion on an expedited

4   basis. *See* App. at 2:9-10; *see also Mission Power*, 883 F. Supp. at 492. The plaintiffs

5   also do not claim that they are "without fault in creating the [alleged] crisis that

6   requires ex parte relief." *See Mission Power*, 883 F. Supp. at 492. Nor could they, as

7   any crisis in this case is of the plaintiffs' own making. *See, e.g.*, App. at 4:10-11

8   (acknowledging that the plaintiffs were "late" in responding to defendants' first

9   discovery requests); 4:18-21 (establishing that plaintiffs waited almost three months,

10  until April 30, to serve their *first* discovery requests). The plaintiffs' ex parte

11  application is improper and should be denied as such. *See Mission Power*, 883 F.

12  Supp. at 492 ("[F]iling an ex parte motion . . . is the forensic equivalent of standing in

13  a crowded theater and shouting, 'Fire!' There had better be a fire.").

14  **II.   The Motion To Extend The Discovery Cut-Off.**

15         **A.   The Plaintiffs Will Not Be Irreparably Harmed.**

16                **1.   The Discovery Cut-Off Is Over A Month Away.**

17         The discovery cut-off date, July 23, is over a month away. That is more than

18  enough time for the plaintiffs to conduct depositions, serve any additional written

19  discovery, and file any discovery motions they deem necessary. *See* Fed. R. Civ. P.

20  30(b) (depositions require "reasonable written notice"), 33(b) (receiving party has 30

21  days to respond to interrogatories), 34(b)(2) (receiving party has 30 days to respond to

22  request for production of documents), 45(c)(3)(A)(i) (subpoena must provide "a

23  reasonable time to comply"); C.D. L.R. 37 (outlining joint stipulation procedure for

24  discovery motions). That the plaintiffs have postponed their discovery efforts to the

25  last few weeks of the discovery period, and may have a busy month ahead of them, is

26  insufficient to show "irreparable prejudice." *See Hanger Prosthetics & Orthotics, Inc.*

27  *v. Capstone Orthopedic, Inc.*, No. 06-2879, 2007 WL 3340935, at *1 (E.D. Cal. Nov.

28  9, 2007) (plaintiff's argument that it had "'very limited time' to obtain discovery

1    before taking depositions and filing any motions to compel" did not "justify

2    shortening the time for hearing Plaintiff's motion" to extend the discovery cut-off).

3    Plaintiffs' counsel's reluctance to adjust a preferred vacation schedule also does not

4    warrant an ex parte application for "extraordinary relief." *See supra* note 2.

5         Finally, the plaintiffs had (and still have) adequate time to file a regularly-

6    noticed motion to extend the discovery cut-off through the procedure outlined in the

7    Federal Rules. *See* C.D. L.R. 6, 7 (regularly-noticed motion requires 28-day briefing

8    schedule).[9]  For all these reasons, the Court should conclude that the plaintiffs have

9    failed to demonstrate that their cause "will be irreparably prejudiced if the underlying

10   motion is heard according to regular noticed motion procedures." *Mission Power*, 883

11   F. Supp. at 492.

12              2.    The Plaintiffs' Discovery Motion Is Meritless.

13        The Court should also consider the merits of the plaintiffs' proposed motion

14   since, "if [the motion] is meritless, failure to hear it cannot be prejudicial." *Id.*

15   Consideration of the severity of the potential harm to the requesting party is also

16   proper; if the threatened prejudice is not severe, "it must be apparent that the

17   underlying motion has a high likelihood of success on the merits." *Id.*[10]

18        Here, the plaintiffs' motion has no merit. "A scheduling order may be modified

19   only upon a showing of good cause. The focus of the 'good cause' analysis under

20   Rule 16(b) is the diligence of the party seeking the modification." *In re Imperial*

21   *Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005, 1017 (C.D. Cal. 2003).

22

23   _____

24   [9]  It is also irrelevant that, if true, the Court will be unavailable in July until July 25th
     (*see* App. at 4:28-5:2), as the plaintiffs have known since February 22 that the

25   discovery cut-off date is July 23, 2010. They did not need to wait until June 17 to
     request an extension.

26
     [10]  The contrary is not true; that the underlying motion is likely to succeed on the
27   merits does not necessitate a finding of irreparable prejudice. *See Costner v. MRA*

28   *Funding Corp.*, No. 09-649, 2009 WL 1106815, at *2 (C.D. Cal. Apr. 23, 2009).

1   The plaintiffs in this case have been anything but diligent.  They waited months

2 to respond to the defendants' first written discovery, waiving all objections.[11]  And

3 they waited many more months to propound any discovery on the defendants.  They

4 waited until the last moment to schedule depositions and then wasted crucial time

5 trying to depose the CEO of an ultimate parent company in the Netherlands who has

6 nothing to do with this case.  When the plaintiffs finally sought documents, their

7 requests were extremely broad.  By way of example, the plaintiffs requested "ALL

8 DOCUMENTS that CONCERN OR RELATE to DESARIO" and "NBR from

9 January 1, 2007 to the present."  Pao Decl. Ex. 22 at Requests 1, 2.  Yet the plaintiffs

10 now seek an extension of the discovery cut-off as a result of the defendants'

11 *compliance* with the plaintiffs' broad requests.  The plaintiffs claim that the

12 defendants have produced *so many* documents that the plaintiffs need additional time

13 to review them all.  *See* App. at 5:16-17 (complaining about the defendants "egregious

14 tactics," such as producing "nearly 35,000 pages of documents" in response to the

15 plaintiffs' document requests).  Not only is this not a "crisis," it is a predicament of

16 the plaintiffs' own making.  It is also clearly a delay tactic.  If the defendants had

17 produced fewer documents, the plaintiffs would be seeking an extension of the

18 discovery cut-off to compel production of the remaining responsive documents.  *See,*

19 *e.g.*, App. at 4:24-25 (claiming inconsistently that, despite the defendants' production

20 of "nearly 35,000 pages of documents," "the plaintiffs [have] nothing to conduct

21 meaningful depositions and additional discovery").

22   With respect to the plaintiffs' complaint that the defendants failed to properly

23 respond to interrogatories requesting that the defendants identify documents, the

24 defendants appropriately objected to such requests as overly broad, unduly

25

26 [11]  In fact, the plaintiffs *still* have not served written responses to the defendants' first

27 requests for production of documents, which the plaintiffs received in February.  Pao

28 Decl. ¶ 21.

1   burdensome, and duplicative and, instead, produced the very documents for which the

2   plaintiffs had requested descriptions. *See, e.g.,* Pao Decl. Ex. 12 (Daniel DeSario's

3   First Set of Special Interrogatories to Defendant Aspen Publishers Inc.) at

4   Interrogatory No. 10 (requesting descriptions of "all the documents that evidence the

5   existence of the communications [Aspen Publishers, Inc. or its employees] had with

6   the Plaintiffs, including an employee, partner or owner of [NBR].").  Those

7   interrogatories demanded that the defendants "identify all documents" relevant to the

8   plaintiffs' allegations, "includ[ing] the form of the document, its title, the means of

9   writing if the document is in the written form, . . . a summary of the contents of the

10  document, the date of the document, the name(s) of the author(s) of the document, the

11  name(s) of the person(s) signing the document and the place where the document was

12  created or originated from." *Id.*  Once the plaintiffs have the responsive documents in

13  their possession, they are able to locate the desired documents with the same degree of

14  ease as the defendants. *See* Fed. R. Civ. P. 33(d).  To the extent the plaintiffs disagree

15  with the defendants' objections, the proper recourse is to request relief from the

16  Discovery Magistrate through the joint stipulation procedure outlined in the local

17  rules.  Sufficient time remains for the plaintiffs to seek relief through the proper

18  channel and, therefore, ex parte relief is improper.

19          The plaintiffs also complain that the defendants' documents were produced in

20  an intentionally unorganized fashion.  That is simply untrue.  The documents were

21  produced in accordance with the parties' Joint Rule 26(f) Report. *See* Pao Decl. Ex. 7

22  at 3-4.  The defendants' documents were all stored in electronic form.  The parties

23  agreed in their Rule 26(f) conference that the parties need not produce metadata,

24  which, at the time, the parties thought was most efficient. *See id.*  Normally, metadata

25  would allow a party to organize document production in a document review platform.

26  Without metadata, however, the parties' only options are to print out or provide PDFs

27  of the documents reviewed.  That is exactly what the defendants did here.  In the

28  interest of time (because the plaintiffs were eager to receive documents responsive to

1   their late requests), and in compliance with the parties' prior agreement, the
2   defendants' responsive documents were produced in the order in which they were
3   reviewed and processed. *See* Fed. R. Civ. P. 34(b)(2)(E) ("*Unless otherwise*
4   *stipulated or ordered by the court*, these procedures apply to producing
5   documents...") (emphasis added); *In re Bisphenol-A (BPA) Polycarbonate Plastic*
6   *Prods. Liab. Litig.*, No. 08-1967, 2010 WL 2134275, at *3 (W.D. Mo. May 26, 2010)
7   (holding that the parties' agreement regarding "particular methods of document
8   production" and the court's subsequent order trump requirements laid out in Rule
9   34(b)(2)(E)). In fact, the plaintiffs produced documents in the same way (except on
10  one occasion without Bates numbers, which we put on their documents for them). *See*
11  Pao Decl. Ex. 40.[12]

12       The plaintiffs' lack of diligence demonstrates the absence of good cause for the
13  discovery period to be prolonged; therefore, the plaintiffs are unlikely to prevail on
14  their underlying motion. Because the plaintiffs are unlikely to prevail on the
15  underlying motion, and for the additional reason that they have sufficient time to
16  complete discovery, they fail to demonstrate that they will be irreparably prejudiced if
17  the Court denies their motion for ex parte relief.

18       **B.     The Discovery Cut-Off "Crisis" Is Of The Plaintiffs' Own Making.**
19       To satisfy the second element required to justify ex parte relief, the plaintiffs
20  must demonstrate that they are "without fault, or guilty only of excusable neglect."
21  *Mission Power*, 883 F. Supp. at 493. This demonstration requires more than a

22  _____

23  [12] The plaintiffs make much of the fact that a document was purportedly duplicated
24  1,259 times in the defendants' production. *See, e.g.*, App. at 17-18. That is incorrect.
    One of the documents responsive to the plaintiffs' document requests is a spreadsheet
25  that contains a large number of duplicate cells. Pao Decl. ¶ 52. The only way to print
    out that document was to print out thousands of pages, most of which contain
26  duplicate data. *Id.* In other words, the duplication of which the plaintiffs complain
27  occurred in the original responsive document. The defendants did not purposely
    duplicate a document over a thousand times as the plaintiffs imply.
28

1    showing that the [defendants are] the sole wrongdoer[s]." *Id.*  Rather, "it is the

2    creation of the [alleged] crisis—the necessity for bypassing regular motion

3    procedures—that requires explanation." *Id.*  For example, "merely showing that trial

4    is fast approaching and that the opposing party still has not answered crucial

5    interrogatories is insufficient to justify ex parte relief.  The moving party must also

6    show that it used the entire discovery period efficiently and could not have, with due

7    diligence, sought to obtain the discovery earlier in the discovery period." *Id.*

8            Here, as explained above, it is the plaintiffs who "created the [claimed]

9    emergency that allegedly warrants *ex parte* relief."  *Shepherd v. U.S. Bank Nat'l*

10   *Ass'n*, No. 09-7742, 2009 WL 3514550, at *1 (C.D. Cal. Oct. 26, 2009).  Had they

11   been more diligent at the beginning or middle of the discovery period, they would not

12   be as rushed as they claim to be in these remaining months.  "Ex parte applications are

13   not intended to save the day for parties who have failed to present requests when they

14   should have." *In re Intermagnetics Am. Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989).

15   **III.    The Motion For A Protective Order Postponing Depositions Of Plaintiffs.**

16           **A.    The Plaintiffs Will Not Be Irreparably Harmed.**

17           In addition to their motion to extend the discovery cut-off date, the plaintiffs

18   seek a protective order postponing the depositions of Plaintiffs Daniel DeSario and

19   National Bar Review and Ms. Fedora Nick (50% owner of National Bar Review),

20   which were originally noticed for mid-June but rescheduled for June 29 and 30 at the

21   plaintiffs' request.  This is a discovery issue that should have been raised with the

22   Discovery Magistrate.  The plaintiffs' motion is premised on their desire to review all

23   of the documents produced by the defendants in advance of defending any

24   depositions.  Specifically, the plaintiffs claim that, as a result of the defendants'

25   document production, their "counsel will not be ready and able to effectively assist

26   their clients at the upcoming depositions that the defendants noticed." *See* App. at

27   5:11-12.

28

The plaintiffs will not be irreparably harmed because their request for a protective order is without merit.  There is no rule permitting a party to delay the taking of depositions until all written discovery has been completed and all responsive documents reviewed.  In fact, the Federal Rules state the exact opposite: "methods of discovery may be used in any sequence." Fed. R. Civ. P. 26(d)(2)(A).  Moreover, "discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(2)(B).  Accordingly, a "plaintiff may not withhold [his] own deposition simply because written discovery is either incomplete or unsatisfactory." *Moss v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 06-4105, 2007 WL 141020, at *2 (D. Kan. Jan. 17, 2007); *see also Resource Assocs. Grant Writing & Evaluation Servs., LLC v. Maberry*, No. 08-552, 2008 WL 5978896, at *1 (D.N.M. Dec. 8, 2008) (holding that the plaintiff "does not have the right to block the Defendants' discovery until it is ready" for the noticed deposition).  Because the Federal Rules authorize a party to conduct depositions before providing the opposing party *any* documents, the plaintiffs' counsel's purported inability to review all relevant documents prior to defending the noticed depositions cannot establish "good cause" for a protective order under Rule 26(c).

### B.    The Plaintiffs Created The Predicament Of Which They Complain.

The plaintiffs complain about the size of the defendants' production of documents.  But it is the plaintiffs' document requests that governed which documents were produced.  Here, the plaintiffs requested, among other things, "ALL DOCUMENTS that CONCERN OR RELATE to DESARIO" and "NBR from January 1, 2007 to the present." Pao Decl. Ex. 22 at Requests 1, 2.  The plaintiffs must have known that these requests would result in the production of many documents.  After all, Mr. DeSario sent and received hundreds of emails to numerous individuals during his tenure with Aspen and was mentioned in hundreds of additional emails.  If the plaintiffs wanted a smaller subset of documents, they should have served more targeted document requests.

1      Additionally, the plaintiffs could have served their document requests on the

2  plaintiffs much earlier in the discovery process.  Counsel for the defendants first

3  raised the issue of depositions in February, suggesting that the parties schedule

4  depositions for June.  Pao Decl. Ex. 27.  If the plaintiffs were concerned about having

5  adequate time to review documents prior to the depositions of their witnesses, they

6  could have immediately served their document requests.  Instead, they sat idle for

7  months, waiting until April 30 to serve discovery on the defendants.  Had those three

8  months been dedicated instead to propounding discovery and reviewing responsive

9  documents, the plaintiffs would not be in the predicament of which they complain.

10  *Cf. Maberry*, 2007 WL 5978896, at *1 (explaining that, if it was important to the

11  plaintiff to obtain documents before the noticed deposition, it "should have begun [its]

12  service efforts" earlier).

13      The *ex parte* procedure is not intended to be an escape hatch for parties who

14  delay propounding discovery until the end of the discovery period.  *See Hanger*, 2007

15  WL 3340935, at *1 (denying request for ex parte relief in part on the ground that if

16  "the referenced discovery had been sought earlier, Plaintiff would not have needed to

17  file its application to shorten time"); *see also* C.D. L.R. 37-3 ("Unless the Court in its

18  discretion otherwise allows, no discovery motions shall be filed or heard on an ex

19  parte basis, absent a showing of irreparable injury or prejudice not attributable to the

20  lack of diligence of the moving party.").

21  **IV.   The Motion To Compel Depositions In Los Angeles.**

22      Finally, in addition to their other demands, the plaintiffs request an order

23  compelling that all depositions be held in Los Angeles.  This request should also be

24  denied for the reasons explained below.

25      **A.   There Are No Depositions To Compel.**

26  Despite repeated requests, the plaintiffs have not yet noticed depositions of the

27

28

Defendants' Opposition to Plaintiffs' Ex Parte Application

1   defendants' witnesses.[13]  Accordingly, there are no "depositions" to compel.  It is not

2   even clear at this time precisely which witnesses the plaintiffs seek to depose.

3   Originally, the plaintiffs indicated that they wished to depose Richard Kravitz, Steve

4   Errick, Robert Becker, and Michael Gregory.  *See* Pao Decl. Ex. 31.  The plaintiffs

5   later said that they would like to depose Richard Kravitz, Steve Errick, Michael

6   Gregory, and non-party Steve Emanuel.  *Id.* Ex. 41.  In addition, the plaintiffs served

7   Rule 30(b)(6) deposition notices on Aspen Publishers, Inc. and Wolters Kluwer

8   United States Inc.  *Id.* Ex. 42.  Those deposition notices were subsequently

9   withdrawn.  *Id.* Ex. 44.  Because the discovery cut-off is nearing and the parties

10  disagree regarding where depositions of the defense witnesses should take place,

11  counsel for the defendants requested several times that the plaintiffs formally notice

12  the defense witnesses for the agreed-upon dates (the week of July 19 to 23) so that the

13  witnesses could seek a protective order clarifying that their depositions must take

14  place near the witnesses' residence or place of business as provided the Federal Rules.

15  *Id.* ¶¶ 55, 58.  Because the plaintiffs refused to serve any notices, there are no

16  depositions to compel, and the plaintiffs' motion fails for that reason alone.

17      **B.      The Plaintiffs' Position Regarding Location Is Meritless.**

18          Even if the issue was ripe for consideration, the plaintiffs' position is without

19  merit.  The plaintiffs seek to depose the defense witnesses in Los Angeles,

20  notwithstanding the fact that they are all located thousands of miles away, in New

21  York (Steve Emanuel, Steve Errick, and Richard Kravitz[14]) and Boston (Michael

22  Gregory).  But the law is clear that non-parties must be deposed at a location within

23  _____

24  [13]  They sent an improper notice for Mr. Kravitz, but then withdrew it.

25  [14]  Mr. Kravitz splits his time between New York and Cincinnati.  Defense counsel has
26  suggested to counsel for the plaintiffs that it would be most efficient for the plaintiffs
    to take Mr. Kravitz's deposition in New York at the same time as those of Mr.
27  Emanuel and Mr. Errick.  However, Mr. Kravitz will make himself available for a
28  deposition near his place of business in Cincinnati if that is the plaintiffs' preference.

1    100 miles of where they live or work.  Fed. R. Civ. P. 45(c)(3)(A)(ii).  Moreover, as

2    acknowledged in the plaintiffs' motion, absent unusual circumstances, depositions of

3    defendants are to take place where the parties are employed or reside.  See Disc. Mot.

4    at 15:9-12.  Not wanting to travel or bear the costs of depositions does not constitute

5    "unusual circumstances."

6        The applicable rules are clear.  "An out-of-state deponent is under no obligation

7    to travel to the location where the case was filed for a deposition."  *O'Sullivan v.*

8    *Rivera*, 229 F.R.D. 187, 188 (D.N.M. 2004).  This rule is premised on notions of

9    fairness; "because a non-resident defendant ordinarily has no say in selecting a forum,

10   an individual defendant's preference for a situs for his or her deposition near his or her

11   place of residence – as opposed to the judicial district in which the action is being

12   litigated – is typically respected."  *In re Outsidewall Tire Litig.*, --- F.R.D. ----, 2010

13   WL 1849035, at *4 (E.D. Va. 2010).  Thus, "[i]n the absence of exceptional or

14   unusual circumstances, when a deponent resides at a substantial distance from the

15   deposing party's residence, the deposing party should be required to take the

16   deposition at a location in the vicinity in which the deponent resides, even if the

17   deponent is a party."  *Metrex Research Corp. v. United States*, 151 F.R.D. 122, 125

18   (D. Colo. 1993); *see also Grey v. Cont'l Mktg. Assocs., Inc.*, 315 F. Supp. 826, 832

19   (N.D. Ga. 1970) ("it is presumed that a defendant will be examined at his residence or

20   at his place of business or employment").[15]

21       If a deposition notice identifies a location other than a defendant's residence or

22   place of business "and [a] defendant files a timely objection the objection should be

---

24   [15] The same rule applies to Rule 30(b)(6) designees.  *Salter v. Upjohn Co.*, 593 F.2d
     649 (5th Cir. 1979); *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D.
25   246, 249 (E.D.N.C. 2005); *Metrex*, 151 F.R.D. at 125.  Accordingly, to the extent the
     plaintiffs renew their requests for Rule 30(b)(6) depositions of any of the corporate
26   defendants, the depositions of the appropriate individuals must take place at the
27   defendant's principal place of business or, in the alternative, at the place of
     employment of the designee.

28

1  sustained absent some unusual circumstance to justify putting the defendant to such

2  inconvenience." *Grey*, 315 F. Supp. at 832.[16]  For example, in *Zhou v. Pittsburgh*

3  *State University*, the court approved a magistrate's decision to order the plaintiff to

4  depose defense witnesses in Pittsburg, Kansas, where they were employed,

5  notwithstanding the plaintiff's argument that "because he reside[d] in Los Angeles,

6  California and defendant has a Kansas City satellite location which is close to a major

7  airport, the Court should require PSU administrators to appear in Kansas City."  252

8  F. Supp. 2d 1194, 1202 (D. Kan. 2003).  The plaintiffs have not identified "any

9  circumstances of undue hardship justifying" the defense witnesses traveling to Los

10  Angeles, and there are none. *See O'Sullivan*, 229 F.R.D. at 189; *see also, e.g., Moss*,

11  2007 WL 141020, at *2 (that attending depositions may require a plaintiff to "incur

12  additional expense . . . does not show undue burden or good cause for a protective

13  order" because "during the course of litigation, parties will generally incur expenses")

14  (quoting *Sentry Ins. v. Shiver*, 164 F.R.D. 255, 257 (D. Kan. 1996)).  As an attorney

15  and a bar review business, the plaintiffs must have known when they filed this lawsuit

16  that they would likely incur deposition-related costs.  The Court should deny the

17  plaintiffs' request and order that the depositions of Messrs. Kravitz, Errick, Gregory,

18  and Emanuel be taken at or near their respective places of residence or employment.

19      In addition to the above considerations, Rule 45 mandates that Steve Emanuel –

20  who is neither a party to this lawsuit nor an employee of a party – be deposed within

21  100 miles from his residence or place of employment.  Specifically, "[o]n timely

22  motion, the issuing court must quash or modify a subpoena that . . . requires a person

23  who is neither a party nor a party's officer to travel more than 100 miles from where

24  that person resides, is employed, or regularly transacts business in person."   Fed. R.

25  _____

26  [16]  As the plaintiffs are well aware, to the extent this issue is not resolved in
connection with the plaintiffs' ex parte application, the defense witnesses plan to file a

27  motion for a protective order with Judge Kenton promptly upon receiving deposition

28  notices specifying a location of Los Angeles.

1    Civ. P. 45(c)(3)(A)(ii); *see also EEOC v. Denny's, Inc.*, No. 06-2527, 2009 WL

2    3246940, at *1 (D. Md. Oct. 2, 2009) ("A non-party who makes a timely objection is

3    *never* required to appear for a deposition" more than 100 miles away from the locales

4    identified in Rule 45) (emphasis added).

5         Because Rule 45 requires that the deposition of Steve Emanuel take place in

6    New York, little additional burden is placed on the plaintiffs to depose Messrs.

7    Kravitz, Errick, and Gregory during the same trip.  In contrast, a substantial burden is

8    placed on each of those witnesses to disrupt their work schedules to travel to Los

9    Angeles.  In the interests of efficiency and cooperation, the four defense witnesses

10   have agreed to make themselves available for deposition on the dates most recently

11   requested by the plaintiffs (the week of July 19-23) at or near their place of residence,

12   so that the plaintiffs may take all four depositions during the same trip.

13        **C.    The Plaintiffs Could Have Followed The Proper Procedure.**

14        Even if the plaintiffs' deposition location position had merit, which it rather

15   clearly does not, ex parte relief would not be appropriate.  The agreed-upon dates for

16   the plaintiffs' requested depositions are still over a month away.  If the plaintiffs had

17   simply served deposition notices on the witnesses, as requested, defense counsel could

18   have moved for a protective order on the normal schedule, as mandated by Local Rule

19   37. *See* C.D. L.R. 37 (outlining joint stipulation procedure for discovery motions);

20   Honorable George H. Wu, Procedures (providing that discovery motions are to be

21   heard by the Magistrate Judge).  Even if the plaintiffs were set on moving to compel

22   rather than serving the notices on the witnesses and permitting them to seek a

23   protective order, the plaintiffs had (and still have) ample time to utilize the proper

24   joint stipulation procedure to request this relief.

25                              **CONCLUSION**

26        The plaintiffs' ex parte application is improper for the many reasons stated

27   above and should be denied in its entirety.  The defendants have submitted a proposed

28   order for the Court's consideration.

1

2   DATED:  June 18, 2010          JENNER & BLOCK LLP

3

4

5                                 /s/ Brent Caslin
                                  _____

6                                 Brent Caslin

7                                 Attorneys for Defendants Wolters Kluwer N.V.,
                                  Wolters Kluwer United States Inc., Aspen
8                                 Publishers, Inc., Richard Kravitz, Steve Errick,
                                  and Michael Gregory

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Alison Royer, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Jenner & Block LLP, 633 West 5th Street, Suite 3500, Los Angeles, California 90071.

On June 18, 2010, I served the documents described below on the interested parties in this case:

(1)    **DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION**

(2)    **DECLARATION OF WILLIAM K. PAO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION**

(3)    **[PROPOSED] ORDER DENYING PLAINTIFFS' JUNE 17 EX PARTE APPLICATION**

(4)    **DEFENDANTS' MOTION TO STRIKE PARAGRAPHS 11 TO 13 OF THE DECLARATION OF DALILA KAMAL-GRIFFIN**

(5)    **[PROPOSED] ORDER STRIKING PARAGRAPHS 11 TO 13 OF THE DECLARATION OF DALILA KAMAL-GRIFFIN**

on the interested parties in this action as follows:

**[X]    (BY PERSONAL SERVICE):** I caused such envelope to be delivered by hand to the above referenced person(s).

Nicholas S. Nassif
Nicholas S. Nassif Law Offices
3055 Wilshire Boulevard, Suite 900
Los Angeles, CA 90010

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 18, 2010 at Los Angeles, California.

Alison Royer

25

Defendants' Opposition to Plaintiffs' Ex Parte Application