Brent Caslin (Cal. Bar No. 198682)
bcaslin@jenner.com
William K. Pao (Cal. Bar No. 252637)
wpao@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3500
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

Attorneys for Defendants Wolters Kluwer N.V.,
Wolters Kluwer United States Inc., Aspen
Publishers, Inc., Richard Kravitz, and Steve Errick

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL J. DESARIO and NATIONAL BAR REVIEW, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> WOLTERS KLUWER, a Netherlands Corporation; WOLTERS KLUWER UNITED STATES, INC., a New York Corporation; ASPEN PUBLISHERS, INC., a Delaware Corporation; RICHARD KRAVITZ, an individual; and STEVE ERRICK, an individual, <br><br> Defendants. | Case No. CV 09-9385-GW(VBKx) <br><br> The Honorable Victor B. Kenton <br><br> **DEFENDANTS' *EX PARTE* APPLICATION TO COMPEL THE 30(b)(6) DEPOSITION OF NATIONAL BAR REVIEW RE DAMAGES AND FOR A PROTECTIVE ORDER RE JIM RIGOS AND THE NCBE; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT** <br><br> [Proposed Order; Declaration of William Pao; Declaration of Brent Caslin filed concurrently herewith] <br><br> Discovery Cutoff: August 30, 2010 <br> Pretrial Conference: October 28, 2010 <br> Trial Date: November 9, 2010 <br><br> Hearing Date: None Requested |

1    Pursuant to Central District Local Rule 7-19, Defendants Wolters Kluwer N.V.,

2    Wolters Kluwer United States Inc., Aspen Publishers, Inc., Richard Kravitz, and Steve

3    Errick respectfully submit this *ex parte* application to request that the Court order

4    Plaintiff National Bar Review, L.L.C. to submit to an appropriate Rule 30(b)(6)

5    deposition on the damages topics identified in the August 16, 2010 Rule 30(b)(6)

6    Deposition Notice to National Bar Review, L.L.C. (except the trade secret damages

7    topic since that claim has been eliminated).  The deposition notice is attached to the

8    concurrently-filed declaration of William Pao as Exhibit 1.  The defendants also

9    respectfully request that the Court enter a protective order precluding further

10   discovery into the defendants' relationships with third parties Jim Rigos and the

11   National Conference of Bar Examiners because that discovery is unrelated to the

12   issues in this case and is being sought by the plaintiffs for the purpose of harming the

13   defendants' business relationships or learning about their confidential but irrelevant

14   licensing agreements with Mr. Rigos and the NCBE.

15   The defendants' *ex parte* application is based on this Application, the attached

16   Memorandum of Points and Authorities, the concurrently-filed Declarations of Brent

17   Caslin and William Pao, and any additional briefing on this subject that may be

18   requested by the Court or submitted under the rules.  Counsel for the plaintiffs was

19   advised, on August 16 and 19, that this *ex parte* request would be made to the Court.

20   The plaintiffs stated both times they would oppose the application.  The parties also

21   had meet-and-confer discussions on these dates, as well as others.  The plaintiffs

22   refused to state during our meet-and-confer discussions why the Rigos or NCBE

23   discovery is relevant to the case.  Regarding the Rule 30(b)(6) issue, the plaintiffs'

24   counsel stated that he would only allow damages discovery through an expert witness.

25

26

27

28

1    DATED: August 19, 2010          JENNER & BLOCK LLP

2

3                                    /s/ Brent Caslin

4                                    Brent Caslin

5                                    Attorneys for Defendants Wolters Kluwer N.V.,
6                                    Wolters Kluwer United States Inc., Aspen
                                     Publishers, Inc., Richard Kravitz, and Steve Errick
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS FOR
## MEMORANDUM OF POINTS AND AUTHORITIES

FACTUAL BACKGROUND .................................................................. 2

   I.     The Plaintiffs' Remaining Claims. ...................................... 2

   II.    The Defendants' Attempt To Take Damages Discovery, Culminating In A Rule 30(b)(6) Deposition At Which The Plaintiffs Refused To Testify.................................................. 4

   III.   The Plaintiffs Attempted Discovery On Irrelevant Confidential Topics. ............................................................. 6

   IV.   The Plaintiffs Refused To Budge After Meet-And-Confer Discussions. ....................................................................... 11

   V.    Local Rule 7-19 Compliance.............................................. 12

ARGUMENT ................................................................................... 12

   I.     National Bar Review Should Be Ordered To Submit To The Rule 30(b)(6) Damages Deposition Topics. ................................. 12

   II.    The Court Should Enter A Protective Order Preventing The Plaintiffs From Inquiring Into Confidential And Irrelevant Areas Regarding Jim Rigos And The National Conference of Bar Examiners. ............ 14

   III.   *Ex Parte* Relief is Appropriate Under The Circumstances. ............... 18

CONCLUSION ................................................................................ 19

# TABLE OF AUTHORITIES

CASES                                                                                  PAGE(S)

*Collens v. City of N.Y.,*
   222 F.R.D. 249 (S.D.N.Y. 2004) ................................................................ 14

*Damiano v. Sony Music Entertainment, Inc.,*
   168 F.R.D. 485 (D.N.J. 1996) .................................................................... 17

*Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,*
   936 F.2d 889 (6th Cir. 1991) ..................................................................... 16

*Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union,*
   103 F.3d 1007 (D.C. Cir. 1997) ................................................................. 18

*FDIC v. Butcher,*
   116 F.R.D. 196 (E.D. Tenn. 1986) ............................................................ 12

*Hickman v. Taylor,*
   329 U.S. 495 (1947) ................................................................................... 13

*Mack v. Great Atl. & Pac. Tea Co.,*
   871 F.2d 179 (1st Cir. 1989) ...................................................................... 18

*Mancini v. Ins. Co. of N.Y.,*
   No. 07-1750, 2009 WL 1765295 (S.D. Cal. June 18, 2009) ....................... 13

*Mission Power Eng'g Co. v. Cont'l Cas. Co.,*
   883 F. Supp. 488 (C.D. Cal. 1995) ............................................................ 18

*Pansy v. Borough of Stroudsburg,*
   23 F.3d 772 (3d Cir. 1994) ......................................................................... 15

*Seattle Times Co. v. Rhinehart,*
   467 U.S. 20 (1984) ..................................................................................... 15

*Sony Elecs., Inc. v. Soundview Techs., Inc.,*
   217 F.R.D. 104 (D. Conn. 2002) ................................................................ 13

*Sullivan Mktg. v. Valassis Commc'ns,*
   No. 93-6350, 1994 WL 177795 (S.D.N.Y. 1994) ....................................... 16

*Sun Pac. Mktg. Co-Op., Inc. v. DiMare Fresh, Inc.,*
　　No. 06-1404, 2009 WL 4673900 (E.D. Cal. Dec. 4, 2009)................................ 16

*Travers v. Shalala,*
　　20 F.3d 993 (9th Cir. 1994)........................................................... 16

*Vallejo v. Alan Vester Auto Group, Inc.,*
　　No. 07-343, 2008 WL 4610233 (E.D.N.C. Oct. 16, 2008)................................ 16

*Wachovia Secs., LLC v. NOLA, LLC,*
　　248 F.R.D. 544 (N.D. Ill. 2008)...................................................... 13


**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ............................................................... 13, 14

Fed. R. Civ. P. 26 ................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

We apologize for this *ex parte* application.  We recognize it is a burden on the Court's busy schedule.  We would not bring the application if the issues were not serious and worthy of an expedited remedy.  With discovery closing in 11 days, we hope this will be the last time we bother the Court with an *ex parte* application.

This application is necessary because the plaintiffs refuse to answer basic questions regarding damages.  The plaintiffs' lawyer instructed the National Bar Review Rule 30(b)(6) damages witness not to answer "any questions about damages" or the factual bases for damages at the Rule 30(b)(6) deposition on damages.  We respectfully request the Court compel a proper deposition of National Bar Review in response to our Rule 30(b)(6) deposition notice on damages.

The second issue for which we seek relief relates to a sideshow that has nothing to do with the issues that remain in this case.  Late in the discovery period, refusing to focus on the actual issues in the case (because they have failed to uncover anything supporting their position on those issues), the plaintiffs began asking questions about the defendants' confidential licensing relationships with third parties.  Those relationships have nothing to do with this case.  The third parties targeted by the plaintiffs are Jim Rigos and the National Conference of Bar Examiners. We have asked the plaintiffs several times how Mr. Rigos or the NCBE might relate to the factual issues in this case, at meet-and-confer discussions and even on the record at depositions, but the plaintiffs refuse to state how these third parties could have any relevance.  The plaintiffs are only pursuing discovery related to the defendants' licensing relationships with Mr. Rigos and the NCBE because they see sensitivity in the business relationships between these third parties and the defendants – sensitivities that Mr. DeSario learned about when he worked with the defendants.  The plaintiffs' conduct is improper.  It is an abuse of the discovery system.  And we respectfully request that the Court enter a protective order preventing further discovery related to Mr. Rigos or the NCBE.

# FACTUAL BACKGROUND

The background section below outlines the parameters of this case, and the discovery at issue, so the Court can fairly evaluate the case and consider our argument that damages issues are relevant to the case but Mr. Rigos and NCBE clearly are not.

## I.    The Plaintiffs' Remaining Claims.

The plaintiffs initially had a large number of claims in this case. Among those claims was a vague allegation about "certain intellectual property held by NBR," which the plaintiffs claimed as their "trade secrets." FAC ¶¶ 58, 68.

As the case progressed, many of the plaintiffs' claims have been dismissed or stricken.[1] The remaining claims are limited to the plaintiffs' allegation that, over a lunch meeting, the defendants contracted to purchase National Bar Review and employ Mr. DeSario for the rest of his life and lease a fancy BMW for him. FAC ¶¶ 82, 96, 100, 102. The plaintiffs' fraud claim is nothing more than an extension of the oral contract claim with an intent allegation. *See id.* ¶¶ 104-111. The case thus centers on whether the defendants promised Mr. DeSario lifetime employment and that they were buying his company, whether the defendants breached those promises, and their intent. An obvious additional area for inquiry relates to the plaintiffs' claimed damages for their breach of contract and fraud allegations.

Critically, there are no intellectual property claims in this case. The plaintiffs have no claim for copyright infringement, trademark infringement, patent infringement, or trade secret misappropriation. Their complaint at one point discussed alleged licensing and "intellectual property" rights, but we moved to strike or dismiss

---

[1] The plaintiffs' claims for breach of written contract, intentional and negligent infliction of emotional distress, breach of fiduciary duty, and alter ego have been dismissed or stricken by the Court. The individual defendants Michael Gregory and Robert Becker have also been dismissed by the Court entirely. Most relevant to this motion, the plaintiffs' vague claims about their "proprietary rights" and "trade secrets" were eliminated by the Court last month. Ex. 6. (all cited exhibits are attached to the concurrently-filed Declaration of William K. Pao)

those allegations and the Court made clear that the plaintiffs do not have any

intellectual-property-related claim and thus may not take discovery in that area.

Specifically, at the hearing on our request that the Court strike the plaintiffs' vague IP

"licensing" and "trade secret" allegations, the defendants warned that "we will have

all kinds of discovery about trade secrets" if the Court did not make clear that the

"licensing" and trade secret allegations had been eliminated.  Ex. 6 at 12:24-25.  The

Court ruled there would be no such discovery in this case.

> THE COURT:  Then in other words, we could do number three[2] with the
> understanding that if they attempt to discover that which would primarily
> be only discoverable in the context of a trade secret cause of action that
> they are not going to be able to do that.

*Id.* at 14:17-21.  After further discussion, the Court reiterated its view that IP

discovery would not be appropriate:

> THE COURT:  Let me do this.  I'm going to go with number three but
> with the understanding that insofar as discovery is concerned that the
> discovery will -- I'm not going to permit discovery as if there were a
> trade secret cause of action.

*Id.* at 15:10-14.  With no intellectual-property claims of any kind, and this direction

from the Court limiting discovery, the case returned to the core issues of the alleged

oral corporate acquisition and the allegation that Mr. DeSario was promised lifetime

employment with the defendants and a new BMW.

---

[2]  "Number three" refers to the broadest of three options the Court offered the
defendants to eliminate the plaintiffs' vague licensing/trade secret allegations: "(3)
simply indicate that any trade secrets misappropriation cannot serve as any basis for
any of the claims in this case absent an explicit claim pursuant to CUTSA and that,
without such a claim, Plaintiffs cannot recover any damages (or other form of relief)
related to any alleged misappropriation of their trade secrets."  Ex. 8 at 4.

**II.   The Defendants' Attempt To Take Damages Discovery, Culminating In A Rule 30(b)(6) Deposition At Which The Plaintiffs Refused To Testify.**

The plaintiffs' primary damages claim is that NBR fell apart after the defendants backed out of an alleged oral promise to buy NBR and employ Mr. DeSario for the rest of his life (and pay for a new BMW).  FAC. ¶¶ 82, 96, 100, 102.  Mr. DeSario described NBR as "the Hindenberg" during his deposition.  Ex. 2 at 13:15-22; Ex. 12 at 273:7-8.  Ms. Nick testified NBR is now "a shell of a company" with hardly any value.  Ex. 10 at 232:15-16.

Despite their claims that NBR's once-impressive revenues have plummeted and that its value has collapsed, the plaintiffs refuse to respond to discovery related to their financial condition.  For example, our first set of document requests asked for any documents relating to the plaintiffs' damages.  Ex. 11 at 9.  In response to our document requests we received few financial documents from the plaintiffs.  Pao Decl. ¶ 16.  We continually ask for the plaintiffs' P&L statements and other revenue records, but the plaintiffs refuse to produce that information.  After this Court twice ordered the plaintiffs to produce all documents responsive to our documents requests, including the damages-related requests, the plaintiffs produced <u>nothing</u> further.  *Id.*

Having struck out on our requests for financial documents from the plaintiffs, we also used Rule 33 to try to discover facts related to the plaintiffs' alleged damages.  We asked the plaintiffs to please "state with specificity all of the alleged damages you allegedly suffer because of the alleged breach of contract . . . ."  Ex. 9 at 6.  In response, the plaintiffs did not identify one single fact or any amount of damages <u>at all</u>.  *Id.* at 6.  They simply objected in their typically improper manner that the response was privileged and that the interrogatory was designed to harass and invaded the plaintiffs' privacy rights.  *Id.*  If nothing else, the plaintiffs are consistent in their bold refusals to comply with the rules and this Court's orders.

Having failed to gather any helpful financial or damages information using document requests and interrogatories, we decided to ask Mr. DeSario about NBR's

finances at his deposition.  He claimed near total ignorance:

> Question:  Do you know if the company keeps financial statements separate and apart from its tax returns?
>
> Answer:  I do not, no.
>
> Question:  Are you aware of any financial records of National Bar Review other than its tax returns?
>
> Answer:  No.

Ex. 12 at 62:12-18.  Mr. DeSario then directed us to Ms. Nick for financial information.  "She did all the financials," he testified.  *Id.* at 57:11; *see also id.* at 61:19 (stating Ms. Nick would be the person to ask about the company's books and transactions); 57:21-24 (again stating Ms. Nick would be the person to ask about documents).  We then asked Ms. Nick about financial documents, but she too said she was not sure where they were.  Ex. 10 at 373:25-374:15.  Sending the defendants in a circle, she referred us back to Mr. DeSario.  *Id.* at 374:5-9.

Our next attempt to find information about NBR's finances and its alleged damages – including previous and current profits – came through a Rule 30(b)(6) notice to NBR.  Ex. 1.  In response to that deposition notice, Mr. DeSario agreed to testify on the issue of damages as National Bar Review's Rule 30(b)(6) witness on damages issues.  Ex. 2 at 6:21-7:11.  It was not a useful deposition.  The plaintiffs' lawyers instructed Mr. DeSario broadly not to answer questions about damages from the beginning: "I'll object on this that my client is not going to testify as to amounts of damages whatsoever in the deposition. . . . ."  *Id.* at 8:8-11.  Mr. DeSario took his lawyer's advice that no questions related to damages would be answered at the Rule 30(b)(6) deposition of NBR on damages:

> Question:  Mr. DeSario, is it the case that you're not going to tell us today what the alleged amount of damages is?
>
> Answer:  That's correct.

1   *Id.* at 8:15-18.  When Mr. DeSario was asked if he had "any knowledge at all about

2   the – the amount of alleged damages suffered by National Bar Review" he was

3   instructed not to answer and refused to answer.  *Id.* at 8:19-9:3.  Mr. DeSario then

4   refused to answer basic fact questions related to damages, such as the number of

5   students that had been clients of NBR.  *Id.* at 14:17-15:16.  He refused to answer

6   questions about NBR distributions to its two owners, himself and Ms. Nick.  *Id.* at

7   18:22-20:1.  For information about profits, Mr. DeSario's lawyer stated that the

8   information would only be taken from tax returns.  *Id.* at 15:20.

9       It became obvious Mr. DeSario would not testify on the amount of or any bases

10  for damages as to any of the topics in the Rule 30(b)(6) deposition notice.  His lawyer

11  confirmed there would be instructions not to answer any questions asking for specific

12  damages.  *Id.* at 11:5-10.  Mr. DeSario and his lawyer further confirmed that there

13  would be no testimony about NBR's profits.  *Id.* at 15:17-16:9.  Mr. DeSario's lawyer

14  asserted the only questions about NBR's gross revenues would be those revenues

15  reported on NBR's tax returns.  *Id.* at 16:14-15.  Mr. DeSario did not know what those

16  returns reflected for 2009 or what NBR's gross revenues were for 2009 (a key

17  damages year for this case).  *Id.* at 17:14-18:9.  The deposition was useless.

18  **III.    The Plaintiffs Attempted Discovery On Irrelevant Confidential Topics.**

19      While refusing to respond to basic discovery questions on damages, the

20  plaintiffs are driving discovery into areas far outside the bounds of relevance.  They

21  spend hours in depositions asking intellectual-property-type questions although there

22  are absolutely no IP-related claims in this case and they have been specifically told by

23  the Court that there will not be discovery into their alleged "licensing" / "trade secret"

24  allegations.  *See supra* p. 3.  Despite the impropriety of the plaintiffs' many IP-type

25  questions, we have been flexible in response.  We will not burden the Court with long

26  transcripts but we can accurately report that the plaintiffs have asked hour after hour

27  of questions about trade branding and other IP-related issues, none of which are

28  relevant to the actual issues in this case.  The plaintiffs have recently, however,

1   embarked on a tangent from their IP tangent.  They are now, at the end of discovery,

2   seeking discovery on licensing and perhaps other issues related to third-parties Jim

3   Rigos and the National Conference of Bar Examiners.  (NCBE)  Neither Mr. Rigos

4   nor the NCBE have any involvement whatsoever with the alleged acquisition and

5   employment issues in this case.  The plaintiffs appear to have given up on their actual

6   claims and simply want to pull licensing rate information and/or cause business harm

7   to the defendants.

8          The plaintiffs first referenced the NCBE in their notice of 30(b)(6) deposition

9   of Aspen Publishers, Inc.  *See* Ex. 15 at 7.  In the 30(b)(6) notice, the plaintiffs

10  identified as a deposition topic "contracts you have or had with the National

11  Conference of Bar Examiners (NCBE) regarding or relating to the assessment test

12  written and authored by Steve Emmanuel [sic] in 2007, 2008, and 2009."  *Id.*  The

13  topic caught our attention because it does not relate to the issues in this case.  We met

14  and conferred with the plaintiffs, identifying the NCBE-related topic as irrelevant and

15  asked the plaintiffs to withdraw it.  Pao Decl. ¶ 2.  The plaintiffs refused to do so.  *Id.*

16  They also refused to tell us why they believe the NCBE or NCBE contracts are

17  relevant to this case.  *Id.*  In light of the parties' inability to resolve the issue, we

18  served objections to the 30(b)(6) notice, explaining that, *inter alia*, the NCBE-related

19  questions are not reasonably calculated to lead to the discovery of admissible

20  evidence as "Aspen's dealings with the NCBE are completely inapposite to the

21  plaintiffs' claims in this case."  Ex. 16 at 19.

22         The plaintiffs then proceeded to ask about the NCBE at party depositions.  *See,*

23  *e.g.,* Ex. 5 at 188:19-190:10.  Specifically, the plaintiffs began asking about the

24  defendants' specific IP licenses with the NCBE.  *See id.*  Recognizing the impropriety

25  of the questions, the defendants asked how the line of inquiry could be relevant to this

26  case.  *Id.* at 190:11-20.  The plaintiffs' lawyers refused to identify any relevancy,

27  simply stating, "You'll find out."  *Id.* at 190:21; 191:3-13 ("No, I'm not going to tell

28  you how [it is relevant]").  We asked several more times how the NCBE inquiry

1   might be relevant to the case, but the plaintiffs could not and did not identify any
2   relevancy. *See id.* at 193:3-14.

3        The plaintiffs then said they would serve a deposition subpoena on the NCBE.
4   When we again asked them how the NCBE could be involved in this case, in their
5   typically non-responsive manner, the plaintiffs wrote "I suspect your client is far
6   better informed regarding its dealings and contracts with NCBE than our clients are."
7   Ex. 17. The plaintiffs then vaguely claimed the NCBE has information regarding the
8   defendants' "ethics as regards their relationships and contracts with members of the
9   bar review community including National Bar Review and NCBE." *Id.* The plaintiffs
10  said they would send the subpoena to us "shortly" and refused to provide any detail as
11  to how the NCBE might have information relevant to the actual issues in this case. *Id.*

12       The plaintiffs appear to have served NCBE with a subpoena. Ex. 4. After it
13  received the subpoena, the NCBE apparently confirmed that it has no information
14  relevant to the issues in this case.[3]  Last night, the plaintiffs sent a revealing letter to
15  the NCBE, explaining their claimed purpose for the subpoena. Ex. 7. They wrote that
16  the subpoena seeks "information relating to both MBE and MPRE" and explained that
17  the real purpose of the inquiry is whether the defendants breached any agreements
18  with the NCBE. *Id.* ("Our inquiry relates to any violation, if any, of contracts
19  between the NCBE and the named defendants"). The letter goes on to misrepresent
20  the named defendants in the case and claims that the defendants improperly modified
21  questions from the NCBE. *See id.* It closes with the allegation that Mr. DeSario
22  claims materials authored by him were used by the defendants improperly under a
23  license. *See id.* The claims don't make sense.

24

25  _____

26  [3] We don't know exactly what the NCBE said because the plaintiffs have not given us
    a copy of the NCBE's objections. But, because the plaintiffs' lawyers reply argues the
27  subpoena is not a "fishing expedition," it is safe to conclude the NCBE responded by
    labeling the plaintiffs' subpoena an improper fishing expedition. *See* Ex. 7.
28

The plaintiffs' correspondence to the NCBE fails to mention that there is no claim in this case which in any way relates to an alleged breach of an NCBE contract. It also fails to state that there are no proprietary rights or trade secret or IP claims of any kind in this case or that the Court has expressly stated there will be no discovery on those issues.  There is no "license" issue in this case.  In fact, the plaintiffs' letter to the NCBE implicitly admits that the plaintiffs are not seeking information relevant to the two issues in this case – claimed lifetime employment and the potential acquisition of NBR.  Instead, the plaintiffs are trying to cause trouble for the defendants by making wild accusations to an entity that the defendants do business with and have licensed content from.

The plaintiffs have also begun seeking discovery related to Jim Rigos, an author that the defendants have had a business relationship with.  *See, e.g.,* Ex. 5 at 218:19-219:9, 219:19-21.  They served a subpoena to Mr. Rigos.  Ex. 3.  Like the NCBE, there is no evidence Mr. Rigos was in any way involved with the facts relating to the two issues that remain in this case: Mr. DeSario's lifetime employment claim and the alleged acquisition of NBR.

We anticipate the plaintiffs will claim Mr. Rigos is relevant to the case because they found an email in the defendants' document production referring to a license agreement between Mr. Rigos and the defendants.  Ex. 18.  The same email also refers to Mr. DeSario.  *Id.*  The email was produced in this case because it mentions Mr. DeSario's name, but it has nothing to do with Mr. DeSario's claim that he was offered employment for life or his allegation that NBR was purchased by the defendants over a lunch meeting.  *See id.*  If the plaintiffs had a copyright claim in this case, the email and its mention of Mr. Rigos might be relevant to that dispute.  But the plaintiffs have no IP or licensing or copyright claims whatsoever, and the Court made clear there is to be no discovery related to the plaintiffs' dismissed licensing claim.[4]

---

[4] The plaintiffs have no "proprietary rights" or licensing claims because those claims
(Continued...)

Mr. Rigos plays no role in the facts related to this case.  There is no claim or evidence he was involved in the alleged meeting at which the defendants purportedly agreed to buy National Bar Review and employ Mr. DeSario for life, there is no evidence or claim he was at the meeting at which the defendants' allegedly breached that agreement, and there is no evidence or claim that he was involved in any other way with the alleged employment agreement or the claimed acquisition of National Bar Review.  The plaintiffs have deposed many of the defendants' employees and former employees and not one has testified to any relationship between Mr. Rigos and the employment or acquisition issues in this case.  There simply is no connection between the claims in the case and Mr. Rigos.

With their case in shambles, the plaintiffs' purpose for deposing Mr. Rigos appears to be to make false claims about the defendants during the deposition, and perhaps reveal confidential information disclosed in this case by the defendants, in an attempt to negatively affect their business relationship with Mr. Rigos.  Because we know the plaintiffs are willing to say anything in this case – including the blatantly false declaration submitted yesterday by Mr. DeSario in connection with another third-party subpoena[5] – the defendants' concern is a real one.  The plaintiffs may also

---

would directly contradict Mr. DeSario's written employee non-disclosure agreement, which explicitly states that anything created during the term of his employment was the property of his employer.  Ex. 19.  The plaintiffs did not plead a trade secret claim because they knew it would require them to attach to the complaint their agreements with the defendants, and those written agreements directly contradict the plaintiffs' "oral contract" claims.  Another reason the plaintiffs have no licensing or IP claims in the case is that they have admitted they have no such rights.  Ex. 12 at 14:17-21; Ex. 10 at 230:9-13 ("these are not proprietary materials to National Bar Review"); id. at 230:15-18 ("Q.  What are proprietary materials that are limited to National Bar Review?  A.  I'm not sure if there are any proprietary materials.").

[5] Mr. DeSario yesterday submitted a declaration to the Court claiming that the defendants' counsel had threatened and scared his accountant.  Ex. 20.  The accountant was deposed this morning and testified that he was neither scared nor threatened by defense counsel.  See generally Ex. 21.

be using discovery to learn about confidential licensing rates between the defendants and the NCBE and/or Mr. Rigos. The one thing that is clear is that the plaintiffs' discovery is not related to the actual issues in this case. A protective order to preclude any further discovery regarding Mr. Rigos or the NCBE is appropriate here.

## IV.   The Plaintiffs Refused To Budge After Meet-And-Confer Discussions.

Because of the obvious impropriety of the plaintiffs' instructions not to answer questions on damages, the defendants attempted to meet-and-confer on the spot – during the deposition – but the plaintiffs refused. Ex. 2 at 40:15-42:7. After the deposition, the defendants again attempted to convince the plaintiffs through several long meet-and-confer conversations that their position was faulty and that they were obligated to provide an appropriate witness under Rule 30(b)(6). *See* Caslin Decl. ¶¶ 2-4. The plaintiffs refused. Caslin Decl. ¶ 4. A few days later, we tried yet again to convince the plaintiffs to provide an appropriate Rule 30(b)(6) deposition designee. Pao Decl. ¶ 4. They again refused. *Id.* ¶ 4. In light of the impending discovery cut-off, this *ex parte* application is necessary to compel the deposition of National Bar Review on the topics listed in the August 16 Rule 30(b)(6) deposition notice (except the trade-secret damages topic, topic I, since the Court ordered there is no need for trade-secret discovery).

We also had a recent meet-and-confer with the plaintiffs about their discovery requests relating to Mr. Rigos and the NCBE. Pao Decl. ¶ 16. In that meet-and-confer discussion the plaintiffs refused to tell us how the NCBE or Mr. Rigos relate to the issues in this case. *Id.* They claimed they could keep their relevancy theory secret. *Id.* They mocked our questions, stating that they did not want to "tip their hand" to potential issues and that we "should know better than" them about Mr. Rigos and the NCBE. *Id.* Based on our experience with the plaintiffs in this case, we have reasonably concluded they have no theory of relevancy but are up to no good.

## V.   Local Rule 7-19 Compliance.

We immediately notified the plaintiffs' counsel that their improper damages-related deposition instructions, in light of the impending discovery cut-off, would result in an application to the Court.  Caslin Decl. ¶¶ 2, 3.  We told the plaintiffs on August 19 that we would be making an immediate application for relief on the damages deposition, Rigos, and NCBE discovery issues.   Pao Decl. ¶ 4.  We again asked the plaintiffs' counsel to change their faulty positions on these issues.  *Id.*  The plaintiffs' counsel stated that the plaintiffs would not change their positions but would oppose the application.  *Id.*  We told them we would thus have to file this application today.  *See id.*

The name of the plaintiffs' counsel is Nicholas Nassif.  His address is 3055 Wilshire Boulevard, Suite 900, Los Angeles, California 90010.  His phone number is 213-736-1899.  His email address is nsnassif@pacbell.net.

## **ARGUMENT**

## I.   National Bar Review Should Be Ordered To Submit To The Rule 30(b)(6) Damages Deposition Topics.

Federal Rule of Civil Procedure 30(b)(6) authorizes a party to notice a subpoena of a corporation or other organization by "describ[ing] with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  Following receipt of a Rule 30(b)(6) deposition notice, the organization must designate one or more individuals "to testify on its behalf" regarding "information known or reasonably available to the organization."  *Id.*  The person(s) so designated must be able to testify *fully* as to the matters designated.  *See FDIC v. Butcher*, 116 F.R.D. 196, 201 (E.D. Tenn. 1986) (an entity served with a 30(b)(6) notice "ha[s] a duty to *prepare* its 30(b)(6) witnesses to speak *for the corporation* on all discoverable information to and to give full, complete and unevasive answers").  If necessary, the entity deponent owes a duty to "educate" its designees, i.e., to prepare them so that they can answer fully questions posed to them as to the designated subject matters.

1   *See Wachovia Secs., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547-48 (N.D. Ill. 2008)

2   (representative must be prepared to "testify not only on matters known to the

3   deponent, but also on subjects that the entity should reasonably know"); *Sony Elecs.,*

4   *Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104, 112 (D. Conn. 2002) (ordering Sony

5   to produce another Rule 30(b)(6) witness where the original designee's testimony

6   "reveal[ed] gaps in his knowledge as well as evasive . . . answers regarding specific

7   topics" identified in the 30(b)(6) notice).

8         This is a relatively simple issue.  We issued a Rule 30(b)(6) deposition notice to

9   National Bar Review regarding the issue of damages.  Ex. 1.  There is no argument it

10   was untimely or in any way faulty.  There were no objections served in response.

11   National Bar Review designated Mr. DeSario to testify on the topics in the notice.  Ex.

12   22; Ex. 2 at 6:21-7:11.  But, when Mr. DeSario appeared for the 30(b)(6) deposition,

13   he was unprepared to discuss damages.  *See supra* pp. 5-6.  To make matters worse,

14   on the instruction of NBR's attorneys, Mr. DeSario refused to answer almost all of the

15   damages-related questions posed to him.  *E.g.*, Ex. 2 at 8:8-11 (objecting on the

16   ground "that my client is not going to testify as to amounts of damages whatsoever in

17   the deposition. . . ."); 8-19-9:3 (refusing to answer question regarding whether he had

18   "any knowledge at all about the – the amount of damages suffered by National Bar

19   Review").

20         The factual basis of the plaintiffs' claimed damages are a proper issue for

21   discovery.  *See* Fed. R. Civ. P. 26(b)(1); *Mancini v. Ins. Co. of N.Y.*, No. 07-1750,

22   2009 WL 1765295, at *6 (S.D. Cal. June 18, 2009) ("the damages claimed by

23   [plaintiff] is a proper subject of discovery").  The defendants are entitled to know the

24   basis of the plaintiffs' damages claims prior to trial.  *See Hickman v. Taylor*, 329 U.S.

25   495, 507 (1947) ("Mutual knowledge [prior to trial] of all the relevant facts gathered

26   by both parties is essential to proper litigation.").[6]  Accordingly, the defendants

---

28   [6] Although the plaintiffs' counsel claims that the topic of damages is for an expert
                                                                (Continued...)

respectfully request that the Court compel National Bar Review to designate and prepare an individual to testify on its behalf on the topic of damages within ten days of the Court's order on this motion.[7]

## II.   The Court Should Enter A Protective Order Preventing The Plaintiffs From Inquiring Into Confidential And Irrelevant Areas Regarding Jim Rigos And The National Conference Of Bar Examiners.

The Federal Rules allow the plaintiffs to seek discovery that is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In other words, discovery "based on pure speculation [and that] amount[s] to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses," is improper. *Collens v. City of N.Y.*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004).[8]

Pursuant to Federal Rule of Civil Procedure 26, the Court "may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Among other things, the Court has the power to (i) forbid certain discovery; (ii) specify the terms of discovery; and (iii) limit the scope of discovery to certain matters. *Id.*  In determining whether "good

---

witness, the defendants' fact-based questions regarding NBR's profits and operations are plainly questions for the plaintiffs themselves, not an expert.  For example, questions regarding the number of students that had been clients of NBR (Ex. 2 at 14:17-15:16) and NBR distributions to its owners (*id.* at 18:22-20:1) are not the province of experts.

[7] There is one exception to our request.  Since Judge Wu eliminated the plaintiffs' "proprietary rights" claims and said there will be no discovery in that area, we do not seek to compel a witness on the damages for that former claim.

[8] Even where proposed discovery is relevant, a court "must limit" the discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

---

1   cause" exists to issue a protective order, courts may consider the following factors:

2   (1) whether the information is being sought for a legitimate purpose; (2) whether

3   disclosure will violate a privacy interest; (3) whether disclosure will cause a party

4   embarrassment; (4) whether disclosure is important to public health and safety; (5)

5   whether sharing of the information will promote fairness and efficiency in the

6   litigation; (6) whether the party seeking the protective order is a public entity or

7   official; and (7) whether the case involves matters of public importance. *Pansy v.*

8   *Borough of Stroudsburg*, 23 F.3d 772, 787-791 (3d. Cir. 1994). Ultimately, courts

9   have broad discretion to tailor protective orders to the circumstances of a particular

10  litigation. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The unique

11  character of the discovery process requires that the trial court have substantial latitude

12  to fashion protective orders").

13        Good cause exists here for a protective order. The information requested by the

14  plaintiffs pertains solely to relationships between the defendants and third parties.

15  Those relationships have no bearing on the DeSario employment or NBR acquisition

16  issues before the Court. Indeed, the plaintiffs' claim of relevance is so attenuated they

17  cannot – or will not – articulate it to the defendants. Ex. 5 at 190:11-21, 191:3-13.

18  Mr. Nassif's letter to the NCBE confirms that the requested information is irrelevant

19  and that the plaintiffs are not seeking information for a legitimate purpose. To the

20  contrary, the plaintiffs seek to determine whether "a substantial number of released

21  questions may have been modified in 2008, perhaps thereafter, without the prior

22  permission or perhaps knowledge of NCBE." Ex. 7.[9] The defendants cannot even

---

[9] As an example of the breadth and irrelevance of the plaintiffs' requests, they have requested from the NCBE "information relating to both MBE and MPRE." Ex. 7. But, as the plaintiffs well know, neither Mr. DeSario, National Bar Review, nor Emanuel Bar Review prepares students for the MPRE exam. *See* Ex. 10 at 236:21-23. The defendants are at a loss to conceive of what MPRE-related information could possibly lead to the discovery of admissible evidence.

imagine how such information might be relevant to the plaintiffs' claims of an oral
acquisition of NBR by the defendants or Mr. DeSario's employment for life contract
claim.  And neither the plaintiffs' original complaint nor the amended pleading makes
a single reference to Mr. Rigos or the NCBE.  *See generally* Compl.; FAC.  Rather, it
appears the plaintiffs are attempting to manufacture a dispute between the defendants
and their business partners for the sole purpose of harassing them and attempting to
gain some leverage from their misconduct.  The only other possible motive is for the
plaintiffs to get a look at confidential licensing rates that have been negotiated
between the defendants and Mr. Rigos or the NCBE.  In either event, a protective
order is appropriate.  *Cf. Travers v. Shalala*, 20 F.3d 993, 999 (9th Cir. 1994) (district
court properly entered protective order barring discovery on "irrelevant" issues); *Elvis
Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 892, 894 (6th Cir. 1991)
(affirming grant of protective order where district court found that "no useful purpose
would be served by any deposition" of the subpoenaed third party because she "had
virtually no personal knowledge of the facts giving rise to th[e] litigation").

    Not only are the Rigos and NCBE topics irrelevant to the matters at issue in this
lawsuit, the requested information – contracts between the defendants and the third-
parties – is confidential information in which the plaintiffs have no legitimate interest
in.  This factor also supports the entry of a protective order.  *Cf. Sun Pac. Mktg. Co-
Op., Inc. v. DiMare Fresh, Inc.*, No. 06-1404, 2009 WL 4673900, at *6 (E.D. Cal.
Dec. 4, 2009) (granting protective order with the explanation that "information related
to the contracts between" a party and a non-party "may include confidential business
information"); *Vallejo v. Alan Vester Auto Group, Inc.*, No. 07-343, 2008 WL
4610233, at *3 (E.D.N.C. Oct. 16, 2008) (granting order precluding plaintiffs from
conducting discovery related to defendants' "proprietary business practices"); *Sullivan
Mktg. v. Valassis Commc'ns*, No. 93-6350, 1994 WL 177795, at *4 (S.D.N.Y. 1994)

1    (granting protective order to defendant publisher that restricted access to sensitive

2    business contracts, proposals and negotiations).[10]  Moreover, because it is irrelevant,

3    sharing the information will not promote fairness and efficiency in this litigation.  If

4    anything, allowing the plaintiffs to take discovery so far afield from the actual issues

5    in this case confuses the issues and makes the conduct of the case less efficient.

6        The plaintiffs' attempt to take discovery of apparent licensing agreements or

7    other business relationships involving Mr. Rigos and the NCBE is also not "fair" to

8    the defendants.  The plaintiffs have acted improperly through discovery at nearly

9    every turn.  They violate Court orders without concern.  Other than their own self-

10   serving testimony, there is no evidence that the plaintiffs' claims have any merit.  Yet

11   they are now attempting to use the authority of the Federal Rules to negatively affect

12   two key business relationships for the defendants.  The depositions will be unpleasant

13   experiences for the third parties.  The plaintiffs will make unsubstantiated claims (as

14   they do in this case constantly) and do what they can to harm the defendants' business

15   interests.  Allowing these plaintiffs to use the authority of the Federal Courts to harm

16   the defendants is profoundly unfair.

17        Finally, no public benefit would result from disclosure of the requested

18   information.  Information relating to contracts between the defendants and NCBE has

19   no bearing on "public health and safety," the defendants are not public entities or

20   officials, and this case involves an alleged acquisition contract between private

21   parties, not issues of public importance.  *See Damiano v. Sony Music Entertainment,*

22   *Inc.*, 168 F.R.D. 485, 491 (D.N.J. 1996) ("where the parties are private, the right to

23   rely on confidentiality in their dealings is more compelling than where a government

24   agency is involved").

25

26

27

28

---

[10] The *Sun Pacific* and *Sullivan* courts granted only limited protective orders because
they concluded that the requested discovery was relevant to the lawsuit.  In contrast,
the discovery requested by the plaintiffs is both sensitive *and* irrelevant.

1    While they have no value, the burden and cost of the plaintiffs' Rigos and

2  NCBE discovery requests would be substantiala.  The plaintiffs want to take

3  depositions of defense witnesses on these topics.  That will require travel to New York

4  or Boston.  The plaintiffs want to force the defendants and their counsel to travel to

5  Wisconsin and Washington for third-party depositions of the NCBE and Mr. Rigos.

6  The defendants will be forced to spend time and money discussing confidentiality

7  with the third parties and explaining the issues in this case.  The third parties

8  themselves will be forced to hire lawyers to represent them.  And it should not be

9  overlooked that the defendants will almost certainly have to spend considerable time

10  and effort comforting their business partners and correcting the misrepresentations and

11  false claims that are sure to take place at the depositions.

12    The cost to the defendants and third parties of permitting the requested

13  discovery plainly outweighs any benefits to the plaintiffs in obtaining private

14  information unrelated to their claims.  As the law makes clear, a party may not "roam

15  in [the] shadow zones of relevancy and . . . explore matter which does not presently

16  appear germane on the theory that it might conceivably become so." *Food Lion, Inc.*

17  *v. United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir.

18  1997); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989).

19  The defendants respectfully request that the Court reign in the plaintiffs' irrelevant

20  discovery requests by issuing a protective order precluding further discovery

21  regarding the defendants' third-party relationships with Jim Rigos and the National

22  Conference of Bar Examiners.

23  **III.    *Ex Parte* Relief Is Appropriate Under The Circumstances.**

24    *Ex parte* relief is appropriate where "the moving party's cause will be

25  irreparably prejudiced if the underlying motion is heard according to regular noticed

26  motion procedures." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488,

27  492 (C.D. Cal. 1995).  It must also be established that the moving party is without

28

1   fault in creating the situation requiring *ex parte* relief, or that the situation occurred as

2   a result of excusable neglect. *Id.*

3         It is proper for the Court to grant an *ex parte* application in this circumstance.

4   Fact discovery closes on August 30, 2010. Ex. 23. If the defendants were to follow

5   the joint stipulation procedure outlined in Local Rule 37, the Court would not hear the

6   defendants' motion to compel until late-September at the earliest, after the close of

7   expert discovery and long after the defendants and third parties Jim Rigos and the

8   NCBE were pulled through unnecessary and expensive discovery proceedings. *See*

9   *id.*; L.R. 37-2.2.

10         The defendants are without fault in creating this situation. The plaintiffs

11   delayed their depositions for months. We finally had to get a court order for the

12   depositions. We attempted to ask Mr. DeSario and Ms. Nick questions regarding the

13   plaintiffs' damages claims. *See supra* pp. 4-5. We also tried to get the information

14   using interrogatories. *See supra* p. 4. The 30(b)(6) deposition notice was our last

15   attempt. *See supra* p. 5-6. The plaintiffs should not be rewarded for their evasive

16   tactics by forcing the defendants to wait until late September to obtain an order from

17   the Court compelling them to explain the facts behind their claimed damages,

18   especially when expert reports are due soon.

19         The defendants certainly cannot be faulted for bringing the Jim Rigos and

20   NCBE issues to the Court's attention at this date. We have been trying to

21   accommodate the plaintiffs' irrelevant IP requests for several weeks, but only a few

22   days ago did the plaintiffs actually serve subpoenas and only last night did the

23   plaintiffs put in writing the reasons for their subpoenas to NCBE – reasons that are

24   totally irrelevant to this case.

## CONCLUSION

26         The defense again apologizes for filing a second *ex parte* application this week.

27   This is not how we normally manage discovery. But the plaintiffs' extreme behavior

28   with respect to their Rule 30(b)(6) damages witness and their decision to use the

1  litigation process to harm valuable business relationships or uncover our proprietary

2  agreements are items of serious and timely concern for the defendants.  We

3  respectfully request that the Court compel the plaintiffs to produce an appropriate

4  Rule 30(b)(6) witness on damages and issue a protective order denying the plaintiffs

5  future discovery into the defendants' business relationships with third parties Jim

6  Rigos and the National Conference of Bar Examiners.

7

8  DATED:  August 19, 2010          JENNER & BLOCK LLP

9

10                                          /s/ Brent Caslin

11                                          Brent Caslin

12                                          Attorneys for Defendants Wolters Kluwer N.V.,
13                                          Wolters Kluwer United States Inc., Aspen
                                            Publishers, Inc., Richard Kravitz, and Steve Errick
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' *Ex Parte* Application to Compel the 30(b)(6) Deposition of National Bar Review